LUDRICK BURTCHELL
*vs.*
FRANK S. WILLEY, SR.

Aroostook.   Opinion, March 31, 1952.

*Roberts & Bernstein,* for plaintiff.

*James P. Archibald,* for defendant.

SITTING: MURCHIE, C. J., THAXTER, FELLOWS, MERRILL, NULTY, WILLIAMSON, JJ.

FELLOWS, J.   After verdict for the plaintiff in the sum of $4,694.50, this case comes to the Law Court from the Superior Court, Aroostook County, on the defendant's motion for a new trial.

The writ in this action was dated June 29, 1950.   The writ was served on June 30, 1950 and was made returnable at Houlton "on the second Tuesday of June, 1950."   There was no term, provided by law, in June at Houlton.   The writ was entered at the September Term 1950, and the defendant entered a general appearance.   The defendant filed no plea to abate and made no motion to dismiss.   The case was continued and tried at the November Term, 1950. After verdict for the plaintiff, the defendant filed motion for new trial on the usual grounds that the verdict was contrary to the law and evidence, and that the damages were excessive.

The principal facts and contentions are these:   On May 5, 1950 at about two-thirty in the morning, on State Highway No. 100 near the town line between the towns of Clinton and Benton, the parties to this suit were operating trailer tractors.   The plaintiff, Ludrick Burtchell of Fort Fairfield, was engaged in sending a load of potatoes to market in his vehicle, and his driver was proceeding southerly. The defendant, Frank S. Willey, Sr., was traveling northerly to obtain a load of potatoes.   The night was foggy.   Both vehicles had the lights on, and the driver of each vehicle was guiding the movement of his vehicle more or less by the painted center line of the highway, which painted center line could be plainly and easily seen.

The plaintiff claims, and Dale Kimball the driver for the plaintiff testified, that he was driving a new 1949 Ford tractor, with a 28-foot trailer.   The tractor was 8 feet wide.

The trailer was 4 feet wider than the tractor and loaded with 15 tons of potatoes. The highway was approximately 20 feet wide, "black top" surface, with "2-foot shoulders." The fog was thick and visibility only about 150 feet. He was driving at the rate of 30 to 35 miles per hour. The plaintiff's driver further testified that he was on his right-hand side of the highway and all of his tractor and all of his trailer was on the right side of the painted white center line. He saw the defendant's tractor trailer when it was 150 feet away and it then was "straddling the white line" with the defendant's left wheels about 3 feet on the plaintiff's side of the road. "I started to cut out and he started cutting to the right to miss, but we were too close." ** "I applied my brakes." The defendant's left rear wheels struck the plaintiff's left trailer wheels. The plaintiff's driver after applying the brakes, went 200 feet, when the trailer and tractor tipped over in the "ditch" on their left side and were damaged so that they were practically a complete loss.

The defendant, on the other hand, testified that he was travelling about 35 miles an hour in an International tractor with 30-foot trailer, and that he could see only "one telephone pole at a time," but "I could see the white line in the center of the road" and "I was keeping the front wheel of my tractor just to the right-hand side of it all the way along." The defendant said that he saw the plaintiff's headlights at 200 feet and that he then was "just to the right of the white line." The defendant said, concerning the plaintiff, that "he was following the line just the same as I was." "He was on the other side of it." "It didn't appear to me as though we were going to hit. In fact, the front of his tractor got way by me before we hit." The rear wheels of the tractors hit. The defendant said "the back end is wider than the front." The defendant did not testify that he turned in any manner toward the right, because he did not believe they were going to hit.

The highway police officer investigated within an hour after the collision and made measurements. He told of locations of broken glass and other materials in the road, and of tire marks on the west side of the highway. The officer said that the plaintiff's driver, Kimball, told him that night that the defendant, Willey, was "one foot over" on Kimball's side of the road, but Willey did not claim to the officer that the plaintiff was on Willey's side of the road. Donald Willey, son of the defendant and riding with his father, was asleep and "heard a crash, that is all."

The Superior Court in any county has jurisdiction of transitory actions such as assumpsit, or action for damages. Transitory actions are personal actions brought for the recovery of money, whether they sound in contract or in tort. In contemplation of law transitory actions "have no locality" and the court has *jurisdiction* in any county. The matter of wrong venue in transitory actions (such as bringing the suit in a county where neither party lives) is a question of procedure. The defendant may submit to jurisdiction in a transitory action in any county, if he chooses. If he objects, he must do so by dilatory plea or motion seasonably filed. If he fails so to plead he waives the objection. *Webb* v. *Goddard,* 46 Me. 505; *Power Co.* v. *Railroad Company,* 113 Me. 103. Local actions, however, such as replevin, must be brought in the county where the statute demands, or there is *no jurisdiction,* and the action may be dismissed on motion, or taken advantage of at the trial. The court on its own motion may dismiss where lack of jurisdiction becomes apparent. Where the statute prescribes the county in which a particular kind of action shall be brought, the action is *local. Power Company* v. *Railroad Company,* 113 Me. 103, 104; *Plaisted* v. *Walker,* 77 Me. 459.

If a wrong return date is made in an action, or if there is no return day, advantage of such an error can be taken by motion or plea in abatement. If the party objecting neglects

to make his motion or file his plea within the time fixed by the rule of court, and he enters a general appearance and goes to trial, he has waived the defect. *Pattee* v. *Lowe,* 35 Me. 121. A writ returnable on a day out of term is voidable and is abatable on motion seasonably filed. *Kehail* v. *Tarbox,* 112 Me. 327; Rule of Court 5. Of course, if the time when the defendant is to appear is not clearly and distinctly stated, or if an impossible date, or there is other lack of proper process, his failure to appear may not justify any legal conclusion against him. *Dover-Foxcroft* v. *Lincoln,* 135 Me. 184; *Railroad Company* v. *Weeks,* 52 Me. 456. If, however, the defendant does appear he may waive the irregularity. The court may in its discretion, and in a proper case, permit an amendment. *Barker* v. *Norton,* 17 Me. 416; *Guptill* v. *Horne,* 63 Me. 405; *Lawrence* v. *Chase,* 54 Me. 196; *Bunker, Appellant,* 129 Me. 317; *Dover-Foxcroft* v. *Lincoln,* 135 Me. 184. See also Revised Statutes 1944, Chapter 100, Section 11, providing in substance that no proceeding shall be reversed for want of form or for circumstantial errors or mistakes which are amendable. In regard to plaintiff making a change of return day in the writ or process before, or after, service on the defendant, see *Bray* v. *Libby,* 71 Me. 276; *Harris* v. *Barker,* 87 Me. 270; *Dodge* v. *Hunter,* 85 Me. 121.

In this case at bar, the return day of the writ was "the second Tuesday of June 1950," a day when no term was to be held. The writ was entered at the September term, 1950. The defendant appeared at the September term and entered a general appearance. The defendant filed no plea in abatement, or motion to dismiss. This action for damages is a transitory action. The court had jurisdiction. The case was continued and tried at the November term, 1950. The irregularity was waived, and, by the waiver, became immaterial in this case.

In order to obtain a new trial on a general motion, it is necessary that the moving party show that the verdict is so

manifestly wrong, that it is apparent that there was prejudice, bias, passion or mistake. *Rawley* v. *Palo Sales, Inc., et al.*, 144 Me. 375; *McCully* v. *Bessey*, 142 Me. 209, 212. The general rule is that the verdict must stand when the testimony is conflicting, and there are two arguable theories presented, both sustained by credible evidence. *Jenness* v. *Park*, 145 Me. 402, 76 Atl. (2nd) 321.

When a person is travelling in a motor vehicle upon the highway, and approaching to meet another vehicle, he must seasonably turn to the right of the middle of the travelled part of the way so that the vehicles may pass each other without interference. Revised Statutes 1944, Chapter 19, Section 72. The statute "means that they must turn in season to prevent a collision, and the one who fails to obey this mandate is prima facie guilty of negligence, and must sustain the burden of excusing his presence upon the wrong side of the road." *Bragdon* v. *Kellogg*, 118 Me. 42.

It is not necessarily negligence to drive an automobile in heavy fog. The driver of an automobile passing through fog has the right to proceed at a reasonable speed, consistent with the existing conditions. The questions of due care is one of fact. *Cole* v. *Wilson*, 127 Me. 316; *Peasley* v. *White*, 129 Me. 450.

The plaintiff must sustain the burden of establishing his own due care at the time of the collision. *Baker* v. *McGary Transportation Company*, 140 Me. 190. The evidence must be evidence that would authorize the jury to find that the damage was occasioned solely by the negligence of the defendant. *Spang* v. *Cote*, 144 Me. 338, 343.

Human nature is such, that when the driver of one automobile is in collision with another, or he has had any form of accident, the driver is often inclined to remember what he desires to remember. Accidents happen so quickly that there is neither time nor opportunity for the driver to observe all

locations, incidents and circumstances. It is only after the accident has happened, and while the driver reviews the facts with a disturbed or uncertain mind, that he endeavors to recall the facts, and to convince himself perhaps, that he acted at the time in the manner that he knows he should have acted. As time goes on, he has so satisfied his own mind as to what happened, that he honestly believes that he actually remembers facts that show he was not at fault. Individuals differ so much in powers of observation, discrimination, and memory, that the members of a jury who hear testimony relating to an accident, have the opportunity to watch carefully the appearance, hesitancies, inconsistencies, and other "court room incidents" that may indicate false or erroneous testimony. A printed record of the testimony gives the reader nothing through ear and eye of some vital things that often lead to truth.

Memory and imagination are in close intellectual brotherhood, and it is difficult to tell what are real memory images and what are details filled in by imagination. The unconscious impressions so blend themselves with conscious realities that they often appear to make a harmonious whole. The only check on such mistaken, or fabricated, testimony is the appearance of the witness himself, the credible testimony of other witnesses, and the circumstances surrounding the transaction. The jury which has heard the testimony and seen the witnesses is, therefore, in a better position to decide disputed questions of fact, than is one who only reads a record.

In this case now under consideration, the plaintiff testified that he was at all times on his right side of the white line that marked the center of the travelled part of the way; that he was proceeding at 30 to 35 miles per hour; and that the defendant was "straddling the white line," with his left wheels 2 or 3 feet over the line. The defendant, on the other hand, said that he was also travelling at 30 to 35

miles per hour, and that he was "just to the right" of the white center line. In fact, the defendant did not believe "we were going to hit."

The questions for jury determination were (1) was the plaintiff in the exercise of due care, and if so, (2) was the defendant negligent? Each claims, and, produces evidence intended to show, that he was in the exercise of due care at the time of the collision. There were "two arguable theories." The jury believed that the theory of the plaintiff was the correct theory, and the plaintiff's evidence, which the jury believed, justifies the verdict. The verdict is not "clearly wrong" and it must stand. The court has no right to substitute its judgment for the verdict of the jury in a case where the record shows that either may have been in the right, although one must have been in the wrong.

The amount of damage found due is not questioned by the defendant. He admits in his brief that "the amount of damage could have been found from the evidence."

*Motion overruled.*