753 P.2d 897

**James A. SCOTT, Plaintiff–Appellee,**

v.

**AZL RESOURCES, INC., Angel Fire Corporation, Breckenridge Nordic Village Corporation, Defendants–Appellants,**

v.

**TOSCO CORPORATION and Scott Spangler, Defendants–Appellees.**

**No. 17130.**

Supreme Court of New Mexico.

April 18, 1988.

Rehearing Denied May 10, 1988.

Poole, Tinnin & Martin, Mel E. Yost, Christopher M. Moody, D. Alicia Worthington, Santa Fe, for appellants.

Sutin, Thayer & Browne, Saul Cohen, Santa Fe, for appellee Scott.

## OPINION

STOWERS, Justice.

Defendants-appellants, AZL Resources, Inc. (AZL), Angel Fire Corporation (Angel Fire), Breckenridge Nordic Village Corporation (Breckenridge), and Baca Grande Corporation (Baca Grande) appeal from the judgment of the district court finding a breach of the employment agreement and

each defendant jointly and severally liable under the theory of piercing the corporate veil. After the notice of appeal was filed, however, Baca Grande settled with plaintiff-appellee James A. Scott (Scott) and it is no longer a party therein. We reverse.

On October 1, 1979, Scott entered into a five-year employment agreement with Baca Grande to serve as the chairman and chief executive officer of Baca Grande, Angel Fire, and Breckenridge. The contract was signed by Scott M. Spangler who was then the president and chief executive officer of AZL. Scott's responsibilities were to assist in the development of three resort properties: Baca Grande, Breckenridge, and Angel Fire. The agreement required Scott to devote his full business time to these duties and not to engage in other business activities. In addition to his annual salary of $100,000, a clause in the contract granted Scott compensation for the "net-after-tax-profits" of the three resorts calculated and payable on a cumulative basis after January 1, 1980.

Throughout his employment, Scott continued to reside in Canada but made frequent trips to the resort properties. Scott never devoted more than two-thirds of his full time to his duties under the contract. As a result, Scott was relieved as chairman and chief executive officer of Baca Grande and Breckenridge on February 1, 1982. Scott had previously been relieved of his duties at Angel Fire. Scott was reassigned as a part-time consultant to the Baca Grande project. He rejected this assignment and filed suit for breach of contract against AZL, Angel Fire, Baca Grande, Breckenridge, Tosco Corporation, Maurice F. Strong, as chairman of the board of AZL, and Scott M. Spangler, as president and chief executive officer of AZL. The complaint against Tosco Corporation, Strong and Spangler was dismissed by the trial court. In special interrogatories, the jury found that the employment agreement was valid and that Scott's termination was unjustified. The jury awarded Scott $583,-971 against Baca Grande which consisted of $390,466 for his salary, $17,100 for fringe benefits, $3,907 for unpaid expenses and $172,498 for incentive compensation.

The court then sua sponte concluded that each subsidiary was the alter ego of AZL and pierced the corporate veil, holding each defendant jointly and severally liable for the judgment rendered against Baca Grande. After hearing Scott's and defendants' post-trial motions for additional findings of fact, the trial court granted Scott $58,400 in attorney fees, and made the following findings: The subsidiary corporations of AZL were used for an improper purpose; the control of AZL over its subsidiaries proximately caused Scott's damages; and prior to signing the employment agreement, Scott knew that AZL and Baca Grande were separate incorporated entities.

Arguments made by defendants on appeal are: (1) The jury verdict awarding Scott $390,466 was excessive and unsupported by the evidence; (2) the district court committed reversible error by refusing to instruct the jury on defendants' theories which were supported by the evidence; (3) the district court abused its discretion by piercing Baca Grande's corporate veil; and (4) the attorney fees awarded to Scott should be reduced or eliminated. The dispositive issue herein is whether the trial court properly pierced the corporate veil to hold each defendant jointly and severally liable.

We have reviewed the entire record and agree with defendants that the evidence does not support the findings by the trial court that led to the conclusion that the corporate veil of Baca Grande, Angel Fire and Breckenridge should be pierced and that each of these corporations and AZL are jointly and severally liable. Findings not supported by substantial evidence and which have been properly attacked on appeal cannot be sustained. *Cruttenden v. Mantura*, 97 N.M. 432, 434, 640 P.2d 932, 934 (1982); *Getz v. Equitable Life Assurance Soc'y of United States*, 90 N.M. 195, 199, 561 P.2d 468, 472, *cert. denied*, 434 U.S. 834, 98 S.Ct. 121, 54 L.Ed.2d 96 (1977). We therefore reverse the judgment of the district court.

■ A basic proposition of corporate law is that a corporation will ordinarily be treated as a legal entity separate from its shareholders. Shareholders can thus commit limited capital to the corporation with the assurance that they will have no personal liability for the corporation's debt. A subsidiary and its parent corporation are also viewed as independent corporations. *Cruttenden,* 97 N.M. at 434, 640 P.2d at 934. The parent has control over the subsidiary, however, by its ownership of a majority or all of the stock therein. Only under special circumstances will the courts disregard the corporate entity to pierce the corporate veil holding individual shareholders or a parent corporation liable. This is done where the corporation was set up for fraudulent purposes or where to recognize the corporation would result in injustice. *Scott Graphics, Inc. v. Mahaney,* 89 N.M. 208, 211, 549 P.2d 623, 626 (Ct.App.), *cert. denied,* 89 N.M. 322, 551 P.2d 1369 (1976).

■ New Mexico decisions have held that piercing the corporate veil is an equitable remedy. Three requirements must be satisfied to obtain this relief: a showing of instrumentality or domination, improper purpose and proximate causation. *Harlow v. Fibron Corp.,* 100 N.M. 379, 382, 671 P.2d 40, 43 (Ct.App.), *cert. denied,* 100 N.M. 439, 671 P.2d 1150 (1983). "Instrumentality" or "domination" means proof that the subsidiary or other subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but it functioned instead under the domination and control and for the purposes of some dominant party. New Mexico decisions refer to the "instrumentality" or "domination" requirement as the alter ego doctrine theory. *Id.* Thus, where a subsidiary is a mere business conduit for the parent or where there is such unity of interest and ownership that the individuality or separateness of the two corporations has ceased, the parent may be held liable for contractual obligations of its subsidiary under this theory. But it also requires a showing that recognition of the separate corporate existence of the two corporations would sanction fraud or other improper purposes.

*Harlow,* 100 N.M. at 382, 671 P.2d at 43; *see also* Annotation, *Corporate Liability–Subsidiary,* 38 A.L.R.3d 1102, 1119 (1971).

■ Defendants argue that the trial court abused its discretion by piercing Baca Grande's corporate veil because Scott knew with whom he was dealing when he entered into the employment agreement with Baca Grande; Baca Grande's corporate form was not used for any improper purpose; and Scott was not proximately harmed by Baca Grande's use of the corporate form. The trial court concluded that during Scott's employment, Baca Grande, Angel Fire, and Breckenridge were each the alter ego of AZL. This conclusion was based on the following findings of fact relevant to the alter ego theory: Each resort owned in its own name some assets including the land constituting the resort; the three resort properties were undercapitalized and maintained separate corporate and financial records at AZL's corporate offices; they operated with a "zero bank account" requiring financing by AZL in the form of loans to the subsidiaries; the subsidiaries and AZL filed consolidated tax returns; they shared common directors and officers at the time Scott entered into the employment agreement; AZL, an Arizona corporation, was the sole shareholder of the three corporations; AZL exercised total control over the bank balances of each corporation paying all of their expenses and losses; Scott was recruited for employment by Spangler and Strong who were both representing AZL in their respective capacities as president and chief executive officer, and as chairman of the board of AZL when they negotiated the employment agreement with Scott and when Spangler signed it; and AZL paid Scott's employee benefits and insurance, and hired legal counsel on behalf of Scott to secure his necessary immigration papers. This evidence was considered by the trial court in concluding that the three corporations were not separate entities but rather functioned as alter egos of AZL. Nonetheless, it is clear that the ownership by one corporation of all or a majority of the stock of the other, or that the corporations have common officers and

directors, or both, is not sufficient by itself to render a parent liable on its subsidiary's contract. 38 A.L.R.3d at 1111. Each additional bit of evidence, however, that tends to show too close or too direct a relationship between the corporations, a disregard by one corporation of the normal corporate processes or formalities in regard to the other, undercapitalization of the subsidiaries, a commingling of funds or a holding out by one that the other is a department of its business or that it stands behind it all favors a finding of parental liability. *Id.* at 1111–12; *see Cruttenden,* 97 N.M. at 434–35, 640 P.2d at 934–35; *Harlow,* 100 N.M. at 383, 671 P.2d at 44. Even if we were to agree with the trial court that the subsidiaries here were the alter egos of AZL, our inquiry does not end there; we must still determine whether AZL's domination or control was used for fraud or other improper purposes to hold it liable on the theory of piercing the corporate veil.

■ Mere control by the parent corporation is not enough to warrant piercing the corporate veil. Some form of moral culpability attributable to the parent, such as use of the subsidiary to perpetrate a fraud is required. *Harlow,* 100 N.M. at 382, 671 P.2d at 43. "Therefore, in fairness to the parent and to support the policy of limited liability [of a corporation], improper purpose must be established before the parent * * * can be found liable." C. Krendl & J. Krendl, *Piercing the Corporate Veil: Focusing the Inquiry,* 55 Denver L.J. 1, 18 (1978).

■ We agree with defendants that the trial court's finding of an improper purpose is not supported by substantial evidence. The district court found that Baca Grande, Angel Fire and Breckenridge were inadequately capitalized during their existence and that the use of a central bank account required AZL to finance the three corporations. Undercapitalization of a subsidiary is a factor to be considered in determining whether there was an improper purpose. *Harlow,* 100 N.M. at 383, 671 P.2d at 44. Thus, a party seeking to pierce the corporate veil must show that the financial setup of the corporation is a sham and causes an injustice. Mere proof that the corporation is now insolvent is insufficient. *Ize Nantan Bagowa, Ltd v. Scalia,* 118 Ariz. 439, 443, 577 P.2d 725, 729 (Ct.App. 1978). There was no showing that the three resort corporations were undercapitalized when incorporated, that their financial setup was only a sham or any injustice resulted from the setup. The trial court found that each conducted business in its own name, received income from such businesses in each of their own accounts and owned valuable assets, all of which tends to show that they were not sham corporations.

The finding by the trial court that Baca Grande lost large sums of money does not point to undercapitalization or any other improper purpose. The fact that a corporation operates at a loss in and of itself is not enough to warrant disregarding the corporate entity. *Scott Graphics,* 89 N.M. at 211–12, 549 P.2d at 626–27. It must be shown that the losses or mismanagement resulted from fraudulent manipulation of the corporation. Although AZL continued to pour large sums of money into Baca Grande to finance capital expenditures, supplying money to a losing business does not constitute an improper purpose. *Harlow,* 100 N.M. at 383, 671 P.2d at 44. On the contrary, the large sums which were spent at Angel Fire eventually succeeded in turning it around.

The use of a "zero balance account" for the resort corporations is also insufficient from which to find an improper purpose. Evidence was presented that this technique was used to avoid having money sitting idle. The monies of the resort corporation were not commingled. AZL's deposits from the subsidiaries were separately allocated and accounted for and were used to satisfy checks written by them. The record does not indicate that AZL profited in any way from the use of this type of account. Nothing in the control exerted by AZL exhibits an improper purpose. In the absence of an improper purpose, we will not disregard the corporate entity and pierce the corporate veil.

The judgment of the district court is reversed and this case is remanded with directions to enter judgment for defendants. The parties will each bear their own costs of attorney fees.

IT IS SO ORDERED.

SCARBOROUGH, C.J., and RANSOM, J., concur.