824 P.2d 1048

**Harold C. MORROW, Plaintiff–Appellee,**

**v.**

**Thomas S. COOPER and Cooper & Company, P.A., a professional corporation, Defendants–Appellants.**

**No. 12475.**

Court of Appeals of New Mexico.

Sept. 20, 1991.

E.H. Williams, Las Cruces, for plaintiff-appellee.

Lisa L. Warren, Kevin E. Kane, Marek, Yarbro & Carter, P.A., Las Cruces, for defendants-appellants.

## OPINION

APODACA, Judge.

Defendants appeal from an adverse judgment entered by the trial court after a non-jury trial. Plaintiff Harold Morrow (shareholder) had filed suit to enforce various rights as a stockholder. In part, he sought a valuation of the fair value of the shares he owned in defendant Cooper & Company, P.A. (the corporation), a closely held professional accounting firm. The corporation counterclaimed for money it claimed shareholder owed it. The trial court awarded judgment to shareholder in the sum of $36,082.09, with interest, against the corporation and defendant Thomas S. Cooper (Cooper), the corporation's major stockholder, jointly and severally.

The corporation and Cooper (referred to collectively as defendants) have raised five issues in their brief-in-chief: whether the trial court (1) had subject matter jurisdiction to hear the case; (2) erred in holding Cooper individually liable for a corporate debt; (3) abused its discretion in binding defendants to an unreasonable interpretation of the parties' pre-trial statement and misapplied NMSA 1978, Section 53–15–4 (Repl.Pamp.1983); (4) erroneously established a "mandatory redemption"; and (5) erred in finding that shareholder had not received any compensation for his stockholder interest or, alternatively, abused its discretion in refusing to grant defendants an equitable offset. We affirm the trial court on Issue 1 and reverse on Issues 2 and 3. Because of our disposition, we need not address Issues 4 and 5.

### FACTS

Shareholder was employed by the corporation as a certified public accountant at the corporation's office in Deming, located in Luna County. In November of 1981, shareholder became a 5% stockholder in the corporation, financing the purchase of one thousand shares of stock for $35,600.00. Shareholder and the corporation made payments toward the purchase of the stock until shareholder ended his employment with the corporation in April of 1984. The corporation paid $9,431.91 on shareholder's debt to the creditor bank for the purchase

of the stock, which amount was not repaid by shareholder. Before quitting, shareholder offered to purchase the corporation's Deming practice, but the offer was rejected. He then left the corporation, taking a number of the corporation's clients with him. After leaving his employment, shareholder continued making the payments in connection with the stock purchase. He never received any dividends for his shares before or after he quit, nor was he granted any of the privileges usually conferred upon stockholders when he left the corporation.

In December of 1987, the corporation agreed to sell most of its assets to another corporation. Learning of the corporation's actions, shareholder filed a dissent to the proposed sale. He later filed his complaint in the trial court, asserting four causes of action: (1) the right to inspect the corporate books; (2) a shareholder's derivative action; (3) dissolution of the corporation; and (4) stock valuation under NMSA 1978, Sections 53–15–3 to –4 (Repl.Pamp.1983) as a dissenting shareholder. The parties submitted a combined pre-trial statement to the trial court and agreed that only the cause of action on the stock valuation would proceed to trial. This claim involved a determination of shareholder's right to be compensated for the fair value of his stock under Section 53–15–4. More specific facts pertinent to each issue are included in our discussion.

### DISCUSSION

*1. Subject Matter Jurisdiction.*

█ Shareholder filed his complaint in Luna County, although the corporation had its registered office in Dona Ana County. Defendants argue that the trial court did not have subject matter jurisdiction over the complaint under Section 53–15–4(E), which states in part:

If, within the period of thirty days [a time period specified in a previous subsection], a dissenting shareholder and the corporation do not [agree on the fair value of the shares], then the corporation * * * may, file a petition in any court of competent jurisdiction *in the county in*

*this state where the registered office of the corporation is located* praying that the fair value of the shares be found and determined * * *. *The jurisdiction of the court shall be plenary and exclusive.* [Emphasis added.]

Defendants rely on the emphasized language to argue lack of jurisdiction. Specifically, they contend that subsection E is a jurisdictional statute and therefore non-waivable. Shareholder, on the other hand, argues that subsection E is only a venue statute and that defendants waived this issue by not pleading improper venue as a defense in the trial court. On this point, we agree with shareholder.

Although the statute, in describing the jurisdiction of the court located in the county of the corporation's registered office as "plenary and exclusive," appears at first glance to be jurisdictional, we do not believe a careful reading indicates that was the legislative intent. *See Quintana v. New Mexico Dep't of Corrections,* 100 N.M. 224, 668 P.2d 1101 (1983) (all rules of statutory construction are aimed at discovering legislative intent). The question of whether subsection E is a venue or jurisdictional statute has never been addressed by this court or our supreme court. However, the same issue has been raised in several other jurisdictions involving statutory language similar in nature.

For example, in *TBK Partners, Ltd. v. Western Union Corp.,* 517 F.Supp. 380, 388 (S.D.N.Y.1981), the statute in question conferred "exclusive" jurisdiction over appraisal proceedings in the judicial district in which a corporation's offices were located. The court there rejected an argument that the statute was jurisdictional.

> That is no more, however, than a venue provision designed to put an appraisal proceeding in one and only one judicial district per each company—and does not purport to be a grant of "exclusive" state-court jurisdiction in the sense contended for by the objectors. *See Application of Harwitz,* 192 Misc. 91, 92, 80 N.Y.S.2d 570, 572; [sic] (Sup.Ct.Bronx

Co.1948) (predecessor of § 623(h) construed as venue provision) * * *.

*Id.*

Additionally, in *In re McLoon Oil Co.,* 565 A.2d 997, 1001 (Me.1989), the subject statute stated that "the appraisal suit 'shall be brought in the county where the registered office of the [corporation] was last located.'" The corporation attempted to argue that the case should be dismissed on jurisdictional grounds. The court held otherwise, stating:

> We reject, however, * * * the [corporation's] argument that the wrong venue is jurisdictionally fatal to the Dissenters' claim to their appraisal remedy as to McLoon's stock. There is no discernable legislative purpose to be served by treating the statutory appraisal proceeding as anything other than a transitory action leading to a conditional money judgment in favor of dissenting shareholders. "The matter of wrong venue in transitory actions * * * is a matter of procedure." *Burtchell v. Willey,* 147 Me. 339, 342, 87 A.2d 658, 660 (1952).
>
> \* \* \* \* \* \*
>
> * * * An objection to venue in [the corporation's] initial pleading or motion would have been the appropriate means to object to the wrong venue.

*Id.*

We agree with the analysis of these two cases. We cannot perceive of any reason why our legislature would prescribe or limit the jurisdiction for actions brought under the subject statute here to one judicial district only. It appears that the purpose of the statute was more a matter of convenience than a matter of conferring exclusive jurisdiction on a particular court.

In *Kalosha v. Novick,* 84 N.M. 502, 505 P.2d 845 (1973), our supreme court discussed the difference between venue and subject matter jurisdiction. " 'Venue, in the technical meaning of the term, means the place where a case is to be tried, whereas jurisdiction does not refer to the place of trial, but to the power of the court to hear and determine the case.' " *Id.* at 504, 505 P.2d at 847 (quoting 20 Am.Jur.2d, *Courts* § 89) (1965). In *Kalosha,* the provision

relied on as jurisdictional also had seemingly mandatory language. The court, however, rejected such an interpretation. In interpreting the provision as one prescribing venue rather than jurisdiction, the court gave two reasons for its decision: (1) there was nothing in the New Mexico Constitution purporting to limit the district courts' jurisdiction in the manner suggested on appeal; and (2) adopting such an interpretation would "encourage dilatory pleading and impede the judicial process." *Id.* at 505, 505 P.2d at 848. *See also Peisker v. Chavez,* 46 N.M. 159, 123 P.2d 726 (1942) (holding that mandatory-sounding language in transitory action statute related only to venue, not to jurisdiction). This same reasoning is applicable to the statute at issue in this appeal. We thus hold that subsection E prescribes venue, not jurisdiction, and that defendants waived this issue by not preserving it in the trial court.

### 2. *Cooper's Individual Liability.*

As noted previously, judgment was granted not only against the corporation but also against Cooper, individually. The only reference to Cooper's individual liability is found in one of the trial court's conclusions of law. There is nothing in the findings or conclusions explaining the imposition of individual liability on Cooper. A judgment cannot be sustained on appeal unless the conclusion upon which it is based finds support in the trial court's findings. *Bustos v. Gilroy,* 106 N.M. 808, 751 P.2d 188 (Ct.App.1988).

We find nothing in Article 15 of the Business Corporation Act or the Professional Corporation Act (NMSA 1978, Sections 53–6–1 to –13 (Repl.Pamp.1983)) that permits rendering an individual judgment against a shareholder of a professional corporation based solely upon a failure of the corporation to properly value the stock of the corporation. For that reason, such liability must be predicated on a theory outside the language of the statute. As observed in Volume 9, Natural Resources Journal, "The New Mexico Professional Corporation," 591, at 614 (1969), although the Professional Corporation Act does not preclude a corporate officer or employee from being sued individually for his wrongful acts, and he can also make the corporation liable for his wrongful acts, the other professional shareholders, who are also the other professional employees, "cannot be held liable." The Professional Corporation Act "limits a shareholder's liability for the acts of the 'employee' or 'agent' to the amount he has contributed to the corporation." To hold an individual liable for corporate debts, the complaining party must establish that the corporation should not be recognized as a matter of law. In *Scott v. AZL Resources, Inc.,* 107 N.M. 118, 121, 753 P.2d 897, 900 (1988), our supreme court stated:

A basic proposition of corporate law is that a corporation will ordinarily be treated as a legal entity separate from its shareholders. Shareholders can thus commit limited capital to the corporation with the assurance that they will have no personal liability for the corporation's debt * * *. Only under special circumstances will the courts disregard the corporate entity to pierce the corporate veil holding individual shareholders * * * liable. This is done where the corporation was set up for fraudulent purposes or where to recognize the corporation would result in injustice.

Shareholder did not plead a cause of action based on a "piercing the corporate veil" theory. Neither did he establish the necessary prerequisites that would entitle him to such extraordinary relief. *See id.* Three requirements must be satisfied to obtain this relief: a showing of instrumentality or domination, improper purpose, and proximate causation. *Id.* Additionally, shareholder did not request a finding that the corporation be pierced and individual liability be imposed on Cooper. *See Fenner v. Fenner,* 106 N.M. 36, 738 P.2d 908 (Ct.App.1987) (a party who does not tender specific findings of fact waives review of the findings on appeal). We conclude there is not substantial evidence nor any findings of fact in the record to support the trial court's conclusion with respect to Cooper's individual liability. Consequently, we reverse on this issue and instruct the trial

court to enter an order dismissing Cooper as a defendant.

### 3. *Valuation Date of the Stock and the Correct Application of Section 53–15–4.*

 Defendants contend that the trial court selected the wrong date in determining the fair value of shareholder's stock. We agree with this contention. Both parties agreed in the pre-trial statement that the value of the stock as of April 16, 1984, the day that shareholder terminated his employment with the corporation, was $45,-514.00. The trial court held that this was also the fair value of the shares at the time the corporation was sold, approximately three years later. Relying on Section 53–15–4(A), defendants argue that the valuation date of April 16, 1984, was incorrect. Subsection A states that the amount to be paid to dissenting shareholders is "the fair value [of the dissenting shareholders' shares represented by certificates] as of the day prior to the date on which the vote was taken approving the proposed corporate action, excluding any appreciation or depreciation in anticipation of the corporate action." Defendants thus argue that the trial judge should have assessed the value of the stock as of the day before the corporation was sold, in December of 1987.

In support of their argument, defendants contend that, when shareholder left the firm, he took a substantial number of the corporation's clients with him. This occurrence, defendants argue, together with the loss of shareholder's services, caused the stock to decline in value. Additionally, defendants argue that, although they stipulated to the value of the stock at the time of termination, they had no intention of stipulating that *that* value would be equal to the value of the stock *at the time of the sale.*

On the other hand, shareholder argues that defendants stipulated to the fair value of the stock in the pre-trial statement and that they cannot now assert that the trial court's adoption of their own appraisal was error. Shareholder relies on the trial court's holding that the pre-trial statement, once approved by the trial court, could not be altered. Shareholder also construes the pre-trial statement as providing that defendants did not contest the fair value of the stock to be $45,514.00 *as of the day before the sale.*

The pre-trial statement states, as an uncontroverted fact, that "[a]t the time of termination of his ownership interest in [the corporation], [shareholder] was the owner of a five percent (5%) interest in said corporation having a value of * * * ($45,-514.00)." Additionally, that part of the pre-trial statement labeled "* * * [shareholder's] claims" states that "the value of * * * [shareholder's] stock remains unsettled[.]" The trial court not only viewed the pre-trial statement as binding on the parties but interpreted defendants' stipulation of the termination value as a stipulation to the pre-sale value. We believe this action by the trial court severely restricted defendants' ability to present evidence indicating that the value of the stocks had depreciated since April of 1984. Defendants have continually objected to this interpretation of the pre-trial statement. As we understand defendants' arguments to the trial court and on appeal, they do not argue that the issues listed in the pre-trial statement should have been modified. Rather, they only contest the trial court's interpretation of the statement's language.

Although we agree with both parties' arguments that a pre-trial order is used to control the course of subsequent proceedings and to eliminate unfair surprise, *State ex rel. State Highway Dep't v. Branchau,* 90 N.M. 496, 565 P.2d 1013 (1977), we do not believe that a trial court should be unbending in its interpretation of the issues. *See Mantz v. Follingstad,* 84 N.M. 473, 505 P.2d 68 (Ct.App.1972) (pre-trial order, while becoming the law of the case, does not prevent the trial court from changing its mind about the applicable law in order to prevent perpetuating error); *Blumenthal v. Concrete Constructors Co. of Albuquerque, Inc.,* 102 N.M. 125, 692 P.2d 50 (Ct.App.1984) (pre-trial order controls subsequent court actions if it is entered without objection and no motion to modify it has been made). In this case, the

trial court was alerted early in the proceedings that the interpretation it intended to give the statement was not that intended by defendants.

As stated in *Crabtree v. Measday,* 85 N.M. 20, 22, 508 P.2d 1317, 1319 (Ct.App. 1973):

> [The parties'] stipulation[s] must be given a fair and reasonable construction in order to effect the intent of the parties. To seek the intention of the parties, the language should *not* be so construed as to give it the effect of an admission of a fact obviously intended to be controverted. Neither should it be so construed as to constitute a waiver of a right not plainly intended to be relinquished. [Emphasis in original.]

Our reading of the pre-trial statement indicates to us that defendants were simply stipulating to the termination value date and nothing more. Doing so did not preclude defendants from showing a fluctuation in value at a later date. Therefore, the trial court should have permitted defendants to introduce evidence on the value of the stock the day before the corporate sale. Additionally, the value of the stock was not listed under the uncontested fact section, and shareholder himself acknowledged in his statement of claims that the value was not settled. By insisting on its own interpretation and limiting the evidence defendants could proffer on the valuation issue, the trial court impeded the efficiency that the pre-trial order was intended to bring with it. *See Johnson v. Citizens Casualty Co. of New York,* 63 N.M. 460, 321 P.2d 640 (1958) (purpose of pre-trial conference is to simplify the issues). We conclude that the trial court should have allowed defendants to present evidence with respect to the fair value of the stock under Section 53–15–4(A). We thus reverse the trial court on this issue and instruct the trial court on remand to conduct an evidentiary hearing on the value of the stock as of the day before the sale. In doing so, the trial court shall take into account the financial loss to the corporation resulting from shareholder's termination, as well as the loss of several of the corporation's clients upon shareholder's termination.

**CONCLUSION**

We hold that: (1) the trial court had subject matter jurisdiction to try this case; (2) neither the pleadings nor the substantial evidence support Cooper's individual liability for the corporate debts in the absence of a showing that the corporation's veil should be pierced; and (3) the trial court erred in its interpretation of the parties' pre-trial statement, thus improperly foreclosing defendants from proving the value of the shares on the day before the sale of the corporation. Because the judgment awarded to shareholder previously took into account the sum of $9,431.91 awarded to defendants on their counterclaim, and this amount was not at issue on appeal, the trial court shall apply this credit to the judgment to be entered on remand. We remand to the trial court for further proceedings consistent with this opinion. Each party shall bear their respective costs on appeal.

IT IS SO ORDERED.

DONNELLY and FLORES, JJ., concur.