This memorandum opinion was not selected for publication in the New Mexico Reports. Please see Rule 12-405 NMRA for restrictions on the citation of unpublished memorandum opinions. Please also note that this electronic memorandum opinion may contain computer-generated errors or other deviations from the official paper version filed by the Court of Appeals and does not include the filing date.

# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

**THE ESTATE OF RAY BISHOP and PATRICIA BISHOP**,

Plaintiffs-Appellees,

v.                                                                    NO. 30,016

**M. MARK MULHOLLAND and PATRICIA MULHOLLAND, Husband and Wife and RUIDOSO VENDING, INC., a New Mexico corporation,**

Defendants-Appellants.

**APPEAL FROM THE DISTRICT COURT OF LINCOLN COUNTY**
**Sandra A. Grisham, District Judge**

Richard A. Hawthorne, P.A.
Richard A. Hawthorne
Ruidoso, NM

for Appellee

Charles E. Hawthorne
Ruidoso, NM

for Appellants

## MEMORANDUM OPINION

**VIGIL, Judge.**

In this case we address whether substantial evidence supports the decision of the district court to pierce the corporate veil of Ruidoso Vending, Inc., (RVI) with the consequence that Mark and Patricia Mulholland (Defendants) are personally liable for a judgment obtained by Plaintiffs against RVI. We affirm.

**BACKGROUND**

The facts of this case start with a purchase of a food and beverage vending machine business by RVI from Ray Bishop. RVI gave Mr. Bishop a promissory note secured by the vending machines and business vehicles sold to it by Mr. Bishop. After Mr. Bishop's death, Plaintiffs (his estate and surviving spouse) brought suit against RVI on the promissory note, and secured a judgment against RVI in the amount of $102,062.11 and attorney fees in the amount of $17,012.15. The judgment ordered RVI to deposit all income earned from its vending machines, minus the commissions owed to shop owners and for gross receipts taxes, into its attorney's trust account for distribution to Plaintiffs by the district court. RVI did not deposit any funds into its attorney's trust account.

We subsequently affirmed the money judgment against RVI. In apparent efforts to avoid paying the judgment, RVI filed a Chapter 11 bankruptcy proceeding seeking a plan to "cram down" a settlement against Plaintiffs. The Chapter 11 trustee

refused the "cram down" plan and the Chapter 11 proceeding was dismissed. RVI then filed a Chapter 7 bankruptcy proceeding seeking to discharge the judgment, but

the Chapter 7 trustee refused to discharge the debt. Plaintiffs then brought this action to pierce the corporate veil of RVI and hold Defendants personally liable for the money judgment.

A non-jury trial was held in which testimony was given by the personal representative of Mr. Bishop's estate and Defendants. Entered into evidence were copies of the money judgment, Defendants' personal income tax returns, RVI's corporate tax returns, and checking account statements for RVI, Defendants, and an account under the name of "M Mark Mulholland dba Ruidoso Vending." Based on the testimony and evidence, the district court found that: (1) RVI had functioned under the domination and complete control of Mr. Mulholland for his personal purposes; (2) Defendants operated RVI for the improper purpose of preventing Plaintiffs from collecting on the money judgment by diverting RVI's income into their personal accounts; and (3) such operation of RVI was the sole and proximate cause of Plaintiffs' inability to collect the money judgment. Finding that the requirements to pierce RVI's corporate veil were satisfied, the district court entered a judgment directing that Defendants are personally liable for the money judgment owed by RVI. Defendants appeal.

**DISCUSSION**

**Standard of Review**

We review the district court's factual findings for substantial evidence, and we examine the application of those factual findings de novo to the district court's determination to pierce the corporate veil. *See Garcia v. Coffman*, 1997-NMCA-092, ¶ 14, 124 N.M. 12, 946 P.2d 216 (stating that we examine the evidence bearing on the three factual requirements for piercing the corporate veil in order to determine whether substantial evidence supports the verdict); *Benavidez v. Benavidez*, 2006-NMCA-138, ¶ 21, 140 N.M. 637, 145 P.3d 117 (stating that we generally review a district court's factual findings for substantial evidence and its legal conclusions de novo).

We are bound by the factual determinations of the district court unless those findings are not supported by substantial evidence. *See Segal v. Goodman*, 115 N.M. 349, 353, 851 P.2d 471, 475 (1993) (stating that "facts found by the trial court will not be disturbed by an appellate court if those factual findings are supported by substantial evidence"). "Substantial evidence is such relevant evidence that a reasonable mind would find adequate to support a conclusion." *Landavazo v. Sanchez*, 111 N.M. 137, 138, 802 P.2d 1283, 1284 (1990). In reviewing for substantial evidence, "[t]he question is not whether substantial evidence exists to support the opposite result, but

5

rather whether such evidence supports the result reached." *Las Cruces Prof'l Fire Fighters v. City of Las Cruces*, 1997-NMCA-044, ¶ 12, 123 N.M. 329, 940 P.2d 177. "Additionally we will not reweigh the evidence nor substitute our judgment for that of the fact finder." *Id.*

**The District Court Did Not Err in Piercing the Corporate Veil**

In general, we treat a corporation as being a legal entity separate from its shareholders. *Scott v. AZL Resources, Inc.*, 107 N.M. 118, 121, 753 P.2d 897, 900 (1988). As such, a shareholder cannot be held personally liable for a judgment incurred by a corporation even if he or she is the sole shareholder of the corporation. *See S. Union Exploration Co. v. Wynn Exploration Co.*, 95 N.M. 594, 600, 624 P.2d 536, 542 (Ct. App. 1981) ("A corporation and a stockholder, even though that stockholder be the owner of the vast majority of the stock, are separate entities." (internal quotation marks and citation omitted)); *Scott Graphics, Inc. v. Mahaney*, 89 N.M. 208, 211, 549 P.2d 623, 626 (Ct. App. 1976) ("Normally the corporation is an insulator from liability on claims of creditors. The fact that incorporation was desired in order to obtain limited liability does not defeat that purpose." (internal quotation marks and citation omitted)). However, under special circumstances, courts may disregard the legal status of the corporate entity and pierce the corporate veil to hold individual shareholders liable. *AZL Resources, Inc.*, 107 N.M. at 121, 753 P.2d at

900.  Piercing of the corporate veil is an equitable remedy, *id.*, and three elements must be proven:  "(1) instrumentality or domination; (2) improper purpose; and (3) proximate cause."  *Garcia*, 1997-NMCA-092, ¶ 10.  We address each in turn.

**A.     There Is Substantial Evidence To Show That RVI Was Dominated by Defendants to Serve Their Personal Purposes**

New Mexico decisions refer to the first requirement of "instrumentality" or "domination" as the alter ego doctrine.  *Harlow v. Fibron Corp.*, 100 N.M. 379, 382, 671 P.2d 40, 43 (Ct. App. 1983).  To satisfy the alter ego requirement, a corporation must be dominated by its shareholders to the extent that the corporation does not have a will of its own but is solely the instrument used for the shareholders' personal purposes.  *See Mahaney*, 89 N.M. at 211, 549 P.2d at 626 (stating that the determination of alter ego describes situations where "the shareholders have so manipulated the corporation to further their own individual interests that the identity of the corporation has merged into its shareholders"); *Harlow*, 100 N.M. at 382, 671 P.2d at 43 (stating that it must be proven that the "corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but that it functioned under the domination and control and for the purposes of some dominant party" (internal quotation marks and citation omitted)).  Important factors to consider to determine alter ego include whether:  (1) the shareholders ignored corporate processes or formalities; (2) there is a commingling of corporate funds with the

7

shareholders' funds to the benefit of the shareholders; and (3) there is undercapitalization of the corporation. *See Garcia,*1997-NMCA-092, ¶ 17; *Harlow,* 100 N.M. at 383, 671 P.2d at 44. The following evidence is substantial to support the district court's finding that RVI was the alter ego of Defendants.

Prior to entry of the money judgment, Defendants deposited RVI's income into a checking account under its own name. Sometime after the money judgment was entered, the account's name was changed to "M Mark Mulholland dba Ruidoso Vending Commission Account," and we refer to this account as the RVI account. Around the same time, another account was opened called "M Mark Mulholland dba Ruidoso Vending," which we refer to as the doing-business account. The last account relevant to this case is the joint personal bank account named "Mr. or Mrs. M. Mark Mulholland," which is Defendants' personal account. All of the funds in these accounts are from Defendants' vending business and no other sources of income.

Defendants were the only directors, shareholders, and officers of RVI, and they governed all aspects of RVI's business, including the corporation's finances. RVI did not have any bylaws to govern its operations and no stock was formally issued. No corporate formalities, such as directors meetings, shareholder meetings, or minutes of any corporate acts or decisions, were held or produced, and RVI did not have an operating bank account in its own name since approximately a year after entry of the

8

money judgment. Defendants also failed to file RVI's tax returns for the years of 1996-2005 until they were required to do so by the bankruptcy court in 2006, and no tax returns were filed for RVI since that time.

In regard to commingling, Defendants continued to operate a vending business as a sole proprietorship but with income and assets belonging to RVI without any compensation to the corporation. The majority of RVI's income derived since the entry of the money judgment was transferred into either Defendants' personal account or the doing-business account. Defendants transferred such income to pay for their services and other business expenses, but they did not use RVI's funds to benefit the corporation's interests by paying off the judgment entered against it in compliance with the court order. Defendants also used RVI's income to pay personal loans, including a truck titled to Mr. Mulholland individually which was used in his personal business. Defendants did not prepare financial statements, inventory, or listings of the locations where RVI had vending machines in order to distinguish RVI's assets from Defendants' alleged non-corporate business property. Defendants also failed to trace the money deposited into Defendants' personal account or the doing-business account to their personal business at trial.

As to undercapitalization, Mr. Mulholland alleged that RVI is operating at a loss, and RVI has filed for bankruptcy on three different occasions. In addition, the

records reflect that only $8,354.41 was deposited into RVI's account for the year of operation before trial.

**B.      There Is Substantial Evidence to Show That RVI Was Operated for an Improper Purpose**

The corporation must also be operated for an improper purpose. *AZL Resources, Inc.*, 107 N.M. at 122, 753 P.2d at 901. An improper purpose occurs when the corporation's assets misrepresented are to the detriment of creditors. *See Mahaney*, 89 N.M. at 212, 549 P.2d at 627; *see also AZL Resources, Inc.*, 107 N.M. at 122, 753 P.2d at 901 (stating that there must be a showing that the financial setup of the corporation is a sham or caused an injustice as a result); *Harlow*, 100 N.M. at 383, 671 P.2d at 44 (stating that there is no showing of improper purpose when commingling of the dominating parties' funds with corporate funds results in the supplying of money to the losing business of the corporation and not the parties taking money or other assets from it). We determine that the following evidence supports the district court's findings that RVI's assets were misrepresented as being Defendants' personal asserts and that this was done so as to prevent collection of the judgment by Plaintiffs.

Around the time of the suit on the note was initiated, income tax returns reflected that RVI's reported gross income was $204,000.00, and Defendants' reported gross income was approximately $34,000.00. After entry of the money

judgment, around $53,000.00 was deposited into RVI's account while the sum of $264,060.00 was deposited into Defendants' personal account and $49,343.00 was deposited into the doing-business account. The year following entry of the money judgment, merely $8,354.41 was deposited into RVI's account while $176,367.39 was deposited into Defendants' personal account and $82,442.19 was deposited into the doing-business account.

At trial, the district court told Mr. Mulholland that the above facts and figures made it appear at if corporate funds were being taken from the RVI account and reported as personal income. The district court further stated that a tracing of the funds to personal assets as opposed to corporate assets was important to Defendants' case. Mr. Mulholland was unable to provide a legitimate explanation for the discrepancies in the accounts or to trace his alleged personal income to his sole proprietor vending business other than $12,000-$16,000 from individually owed gum ball machines.

11

**C. There Is Substantial Evidence to Show That the Domination of RVI for Improper Purposes Proximately Caused Plaintiffs' Injury**

The last requirement to pierce the corporate veil is that the domination of the corporation for an improper purpose must proximately cause injury to Plaintiffs. *Garcia*, 1997-NMCA-092, ¶¶ 10, 24. It is undisputed that no funds have been deposited into the trust account of RVI's attorney. Defendants placed the funds derived from RVI's vending machines and income into Defendants' personal account and the doing-business account, and, thus, represented these corporate funds as personal income. If Defendants had appropriately identified the income derived from RVI's vending machines as corporate profit and, properly deposited the funds into RVI's attorney's trust account as ordered, Plaintiffs would have been able to collect the judgment and would not be injured. Therefore, these facts are sufficient to show that Defendants' representations of RVI's finances proximately caused Plaintiffs' injuries.

Defendants argue that piercing RVI's veil is improper because Mr. Bishop knew that he was dealing with a corporation when he entered into the agreement to sell his vending business, and RVI was set up for a legitimate purpose. We are unpersuaded. The contracting parties' intent during the original transaction has no bearing on the subsequent operation of RVI to evade collection of the money judgment. In addition, to pierce the corporate veil, New Mexico law does not require

12

that a corporation be set up for a fraudulent purpose. However, its mismanagement at any subsequent time may be used to establish evidence of an improper purpose and an injustice that arose from the creation of the corporation. *See AZL Resources, Inc.*, 107 N.M. at 122, 753 P.2d at 901 ("There was no showing that the three resort corporations were undercapitalized when incorporated, that their financial setup was only a sham or any injustice resulted from the setup."); *Mahaney*, 89 N.M. at 212, 549 P.2d at 627 (stating that "should mismanagement occur for fraudulent purposes or result in injustice, then the corporate entity will be disregarded").

In sum, we conclude that there is substantial evidence to support each of the three requirements to pierce the corporate veil and thus hold Defendants personally liable for the money judgment.

**CONCLUSION**

For the foregoing reasons, the judgment is affirmed.

**IT IS SO ORDERED.**

                       _____

                       **MICHAEL E. VIGIL, Judge**

WE CONCUR:

_____
**RODERICK T. KENNEDY, Judge**

_____
**TIMOTHY L. GARCIA, Judge**

14