575 P.2d 350

MAGMA COPPER CO., a corporation, T. J. Hicks and Barbara Hicks, husband and wife, Appellants,

v.

Floyd SHUSTER and Jeanie Shuster, husband and wife, Appellees.

No. 2 CA–CIV 2495.

Court of Appeals of Arizona, Division 2.

Dec. 20, 1977.

Rehearing Denied Jan. 20, 1978.

Review Denied Feb. 15, 1978.

**152**

Fish, Briney, Duffield & Miller, P. C. by Richard Briney, Tucson, for appellants.

O'Meara, Michela, Brogna & Weber by Carmine A. Brogna, Tucson, for appellees.

## OPINION

RICHMOND, Judge.

While Floyd Shuster was a patient for rehabilitative therapy in the Magma Copper Company Hospital in San Manuel, two incidents occurred involving Dr. T. J. Hicks, the hospital medical director. First, during an apparently heated exchange in Shuster's room about his violation of hospital regulations, Dr. Hicks struck Shuster in the mouth. Second, two days later in the hospital physical therapy department, Dr. Hicks applied painful pressure with his thumb to Shuster's injured knee.

Shuster brought an action against the doctor and Magma Copper Company as his employer, seeking compensatory and punitive damages for battery in separate counts arising out of each incident. At trial Dr. Hicks admitted the incidents, but contended that he struck Shuster because Shuster uttered an obscenity in the presence of a female nurse and "was acting like a child." He said the second incident was part of a physical examination, involved no abnormal pressure on the knee, and was totally unrelated to the first.

The jury was instructed that if the doctor was liable his employer was also. It returned a verdict against both on the first count in the sum of $1.00 compensatory damages and $30,000 punitive damages, and in favor of both defendants on the count arising out of the second incident. Motions for judgment notwithstanding the verdict or for new trial were denied.

On appeal the defendants challenge the submission to the jury of the issue of punitive damages, the trial court's instruction that if the doctor was liable Magma Copper Company also was liable, and the amount of punitive damages awarded as excessive. We agree that the disparate amounts of damages require a new trial and remand accordingly.

In support of their first contention, defendants argue that there was no evidence of malice to support the submission of the punitive damages issue to the jury. We disagree. Malice may be implied from the nature of the acts complained of and the circumstances. *Reah v. Jupin,* 68 Ariz. 335, 206 P.2d 558 (1949). Shuster was sitting propped up in his bed when he was struck. Although Dr. Hicks testified that he merely struck him with the back of his fingers, Shuster testified that he was struck by the doctor's fist, and the nurse who was present said "[she] thought it was the fist." Shuster's wife and the doctor both described a quarrelsome meeting between them the previous day regarding Shuster's care in the hospital, and shortly thereafter he was moved from the room he shared with other patients to an unoccupied room where the battery subsequently occurred. The question of malice was properly submitted to the jury on those facts. They differ sharply from the facts in *Safeway Stores, Inc. v. Harrison,* 14 Ariz.App. 439, 484 P.2d 208 (1971), where verdicts in favor of the defendants on counts of false imprisonment, malicious prosecution, defamation and conversion reflected the lack of any evidence of malice.

Likewise, we find no merit to the contention that the evidence presented a jury question whether or not the doctor was acting in the scope of his employment. It is undisputed that he went to Shuster's room to discuss the fact that Shuster had not

been cooperating with hospital personnel. The doctor gave these reasons for striking Shuster:

"I didn't like the language that Mr. Shuster was using and particularly in front of Ms. Fitzpatrick."

\* \* \* \* \* \*

". . . I thought if he was acting like a child if I treated him like a child, like I would my son, if I popped him in the mouth, he would not use the words again."

\* \* \* \* \* \*

"He was startled. He settled down. He quit swearing. We finished our conversation and I left."

Magma suggests that the following exchange somehow raised the possibility that the doctor's act was a purely personal one for which it was not responsible:

"Q. When you made contact with him, as you said, 'you backhanded him', what was your frame of mind with regard to whether you did it with ill will, malice or hostility toward him?

"A. I had no hostility at all other than his using the four letter word in front of the nurses, and as I say, it was spontanious [sic]."

Contrary to Magma's argument, the doctor's testimony led to the single conclusion that, spontaneously or not, he was acting in performance of his duties as the hospital's medical director.

The size of the award for punitive damages presents a more difficult question. Various jurisdictions have limited the discretion of juries in imposing punitive damages by declaring that the amount of punitive damages must bear a "reasonable relation" to the amount of actual damages. The purpose of the rule is to guard against excess, *Finney v. Lockhart,* 35 Cal.2d 161, 217 P.2d 19 (1950), and the only limitation is that the punitive damages must not be so disproportionate to the injury and the actual damage as to plainly manifest that they were the result of passion and prejudice rather than reason and justice applied to the existing facts. *Evans v. Gaisford,* 122 Utah 156, 247 P.2d 431 (1952).

The Arizona Supreme Court, without ever having adopted the rule, acknowledged its existence in *Nielson v. Flashberg,* 101 Ariz. 335, 419 P.2d 514 (1966):

"The amount of an award for punitive damages being a matter of discretion of the trier of fact, such award will not be disturbed unless it is so unreasonable in regard to the circumstances of the case as to show the influence of passion or prejudice. We do not find the award here to have been so unreasonable *nor so disproportionate to the actual damages* as to warrant the granting of a new trial." (Emphasis added.)

101 Ariz. at 341, 419 P.2d at 520.

The judgment in *Nielson* was for $600 actual damages and $5,000 punitive damages. The supreme court implied that there may be a case where the award of punitive damages is so disproportionate as to show the influence of passion or prejudice. If so, it is hard to imagine a more fitting example than the one before us. Our attention has not been directed to any decision upholding a punitive award 30,000 times the amount awarded as actual damages.

Defendants also argue that $1.00 was awarded as nominal damages, and that punitive damages are not recoverable when no actual damage is suffered. *See* Justice Lockwood's special concurring opinion in *Craviolini v. Scholer & Fuller Associated Architects,* 101 Ariz. 33, 37, 415 P.2d 456, 460 (1966).

Both of the above rules have a common object: to "let the punishment fit the crime." Nominal damages have been defined as damages in name only and not in fact; they are the same as no damages at all. *Fairfield v. American Photocopy Equipment Co.,* 138 Cal.App.2d 82, 291 P.2d 194, 198 (1955). They are a mere token, signifying that the plaintiff's rights were technically invaded even though he suffered, or could prove, no loss or damage. *Magnett v. Pelletier,* 488 F.2d 33 (1st Cir. 1973). The term is used to describe a trivial sum awarded in recognition of a technical

injury which has caused no substantial damage. *Ballenger Paving Co. v. North Carolina State Highway Commission,* 258 N.C. 691, 129 S.E.2d 245, 248 (1963).

 Although Shuster testified that he was in pain, embarrassed, and humiliated, the award of $1.00 is commensurate with a finding that he sustained no substantial damage. His counsel conceded at oral argument that he offered no evidence of Magma's wealth on the issue of punitive damages "because it did not seem appropriate under the circumstances." We infer that the predicate for his trial strategy was the same as the predicate for either of the rules urged on appeal by the defendants.

We recognize that the initial responsibility for reducing an excessive verdict is with the trial court, and where it has refused to interfere with the jury's determination of damages, this court cannot interpose its own judgment on the issue unless convinced that the verdict is so outrageously excessive as to suggest, at first blush, passion or prejudice. *Braun v. Moreno,* 11 Ariz.App. 509, 466 P.2d 60 (1970). Either the verdict of $30,000 punitive damages was so disproportionate as to suggest, at first blush, passion or prejudice, or the award of $1.00 damages was so small as to constitute nominal damages. Either way the award of punitive damages cannot stand.

Reversed and remanded for a new trial on the issue of damages only.

HOWARD, C. J., and HATHAWAY, J., concur.