1997-NMCA-092

946 P.2d 216

**Michael V. GARCIA, Plaintiff–Appellee/Cross–Appellant,**

v.

**Ted COFFMAN, D.D., d/b/a Allied Physicians, d/b/a Chiropractic Associates, Musculoskeletal Evaluation Diagnostic Services, Defendants–Appellants/Cross–Appellees.**

**No. 16713.**

Court of Appeals of New Mexico.

June 17, 1997.

Certiorari Denied Sept. 8, 1997.

Frank L. Spring, David M. Berlin, Duhigg, Cronin & Spring, P.A., Albuquerque, for Appellee/Cross–Appellant.

Peter J. Adang, Peter J. Adang, P.C., Albuquerque, for Appellants/Cross–Appellees.

## OPINION

FLORES, Judge.

1. Defendants Ted Coffman (Coffman), Allied Physicians, P.C. (Allied), and Musculoskeletal Evaluation Diagnostic Services appeal from judgments awarding Plaintiff damages upon claims for fraudulent misrepresentation, breach of fiduciary duty, and attorney's fees and costs. Defendants raise the following issues on appeal: (I) the complaint failed to state a cause of action for piercing the corporate veil and the evidence was insufficient to support that claim; (II) it was error to award Plaintiff nominal and punitive damages for breach of fiduciary duty; (III) the absence of actual damages constituted a failure to prove fraud and the jury's award of punitive damages for fraud was error; (IV) the jury's failure to award punitive damages against Allied precluded such an award against Coffman; (V) the punitive damages awards were excessive; and (VI) the award of attorney's fees was error.

2. We reverse the jury's award of nominal damages and punitive damages for fraudulent misrepresentation. We affirm the trial court's award of nominal damages and punitive damages for breach of fiduciary duty and its award of attorney's fees.

## FACTS

3. Plaintiff's claims were tried both to a jury and to the bench. The claim for breach of fiduciary duty was tried to the court. Because Defendants have not challenged the sufficiency of the evidence to support the district court's findings, we rely on those findings to provide the factual background for the legal issues raised by the appeal.

4. Plaintiff was involved in an automobile accident on February 25, 1991. Eight days later, Plaintiff sought chiropractic care from Allied, a corporation wholly owned by Coffman. Coffman never met or spoke with Plaintiff nor provided any direct diagnosis or treatment to him. However, Coffman, individually and through Allied and its employees, designed and implemented a treatment program for personal injury patients such as Plaintiff for the purpose of generating income for Coffman to the detriment of the patients.

5. Coffman made it a practice to hire inexperienced chiropractors and required them to follow his prescribed treatment and diagnostic protocol. He also required other employees to report any deviations from his protocol. Pursuant to Coffman's protocol, unnecessary computerized muscle testing was performed on automobile accident patients by incompetent personnel, and x-rays were taken regardless of whether the treating physician judged the procedures to be appropriate. In Plaintiff's case an excessive number of x-rays were taken, the x-rays were marked up by an unqualified staff member, and the x-ray results were not used in treatment.

6. Dr. Berlin, an employee of Allied and Plaintiff's treating chiropractor, had no discretion to alter the treatment and diagnostic regimen established by Coffman or the communications that Coffman required be made to Allied's patients. The length and frequency of visits and treatment modalities Dr. Berlin prescribed for Plaintiff had no relationship to Plaintiff's individual needs, and the modalities were administered by unqualified personnel on a rote basis. Dr. Berlin ordered blood tests, urinalysis, computer muscle testing, and follow-up x-rays for Plaintiff that were not necessary. Dr. Berlin referred Plaintiff to Dr. Weber for a second opinion without deciding whether such a referral was necessary. Dr. Weber, to whom Dr. Berlin made 50 to 100 referrals in one year, never once opined that a patient should not return to Allied for continued treatment.

Dr. Berlin did not alter treatment of Plaintiff in response to Dr. Weber's opinion regarding Plaintiff, even though the opinion in part did not confirm the correctness of the diagnosis and the efficacy of the treatment program.

7. The jury determined that Coffman dominated and controlled Allied for his own improper purposes and that such conduct caused damage to Plaintiff. The jury also found that Coffman and Allied engaged in unfair trade practices and made a fraudulent misrepresentation to Plaintiff. The jury awarded Plaintiff $1 in nominal damages each from Coffman and Allied and $25,000 from Coffman for punitive damages.

8. After the jury announced its verdict, the trial court decided the equitable issue of breach of fiduciary duty against Coffman and Allied. The trial court found that Coffman was personally liable for Plaintiff's actual damages, but that Plaintiff had failed to prove the amount of those damages. The trial court awarded Plaintiff $1 in nominal damages and $50,000 in punitive damages.

9. The trial court entered judgment against Coffman for $2 in nominal damages and $75,000 in punitive damages. Upon Plaintiff's election of remedies, a $300 statutory award under the Unfair Practices Act, NMSA 1978, §§ 57–12–1 to –22 (Repl. Pamp.1995), was not included. However, the trial court awarded Plaintiff attorney's fees and costs under the Unfair Practices Act.

*DISCUSSION*

## I. Piercing the Corporate Veil

■ 10. Coffman claims both that Plaintiff did not plead a cause of action for piercing the corporate veil and that the evidence was insufficient to support an award of that extraordinary relief. The three requirements for piercing the corporate veil are: (1) instrumentality or domination; (2) improper purpose; and (3) proximate cause. *Harlow v. Fibron Corp.*, 100 N.M. 379, 382, 671 P.2d 40, 43 (Ct.App.1983) (citing Cathy S. Krendl & James R. Krendl, *Piercing the Corporate Veil: Focusing the Inquiry*, 55 Denver L.J. 1 (1978) [hereinafter Krendl], as a source of identification of the three requirements).

## A. Sufficiency of the Complaint

■■ 11. "Under our rules of 'notice pleading,' it is sufficient that defendants be given only a fair idea of the nature of the claim asserted against them sufficient to apprise them of the general basis of the claim[.]" *Petty v. Bank of N.M. Holding Co.*, 109 N.M. 524, 526, 787 P.2d 443, 445 (1990). Plaintiff's second amended complaint may not have been artfully drafted. Nonetheless, the pleading was adequate to inform Coffman that Plaintiff sought to have Coffman held personally liable for the acts of Allied.

■ 12. The caption of the complaint is styled Plaintiff versus "Ted Coffman, D.C., d/b/a Allied Physicians ...." Allegations in the complaint speak in terms of Coffman as the entity that harmed Plaintiff. Plaintiff alleged that Coffman provided unnecessary procedures and treatments, over-billed for services, and otherwise acted improperly to enrich himself at Plaintiff's expense. Plaintiff also alleged that he experienced pain, suffering, and financial loss as a result of Coffman's conduct. Furthermore, Coffman's own pleadings manifest his awareness that Plaintiff sought to hold him personally liable for the acts of Allied. Coffman's memorandum in support of his motion to dismiss the action against him in his personal capacity states that the allegations of the first amended complaint appear to try to state causes of action against him personally and that he never had any dealings with Plaintiff.

13. Coffman was clearly on notice that Plaintiff was seeking to "pierce the corporate veil" even if Plaintiff did not use that phrase. Thus, we hold that the trial court's denial of Coffman's motion to dismiss was not erroneous. *See generally New Mexico Life Ins. Guar. Ass'n v. Quinn & Co.*, 111 N.M. 750, 753, 809 P.2d 1278, 1281 (1991) ("In considering a motion to dismiss for failure to state a claim upon which relief can be granted, we must accept as true all well-pleaded facts and question only whether the plaintiff might prevail under any state of facts provable under the claim.").

## B. Sufficiency of the Evidence

14. We turn next to an examination of the evidence bearing on the three requirements for piercing the corporate veil in order to determine whether substantial evidence supports the verdict. *See Scott v. AZL Resources, Inc.*, 107 N.M. 118, 120, 753 P.2d 897, 899 (1988) (standard of review).

### 1. Instrumentality or Domination

15. This requisite is referred to as the alter ego doctrine. *Harlow*, 100 N.M. at 382, 671 P.2d at 43. " 'Instrumentality' or 'domination' means proof that the ... subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but it functioned instead under the domination and control and for the purposes of some dominant party." *Scott*, 107 N.M. at 121, 753 P.2d at 900.

16. The following evidence is sufficient regarding Coffman's domination and control of Allied. Coffman was the sole shareholder. He established policies designed to limit the judgment of chiropractor employees and to mislead patients as to the need for treatment. Allied's board of directors was comprised of Coffman, his wife, his brother, and a select group of employees. Coffman's wife was appointed chief executive officer and boss of Allied without an election. Coffman and his wife determined all salaries. Coffman's 1991 salary of $600,000 was more than one-third of the total salaries paid to all employees. Coffman's wife's 1991 salary of $2,308 was increased to $660,008 in 1992. Coffman borrowed from and loaned money to Allied.

17. Coffman cites *Scott*, 107 N.M. at 122, 753 P.2d at 901 and *Cruttenden v. Mantura*, 97 N.M. 432, 434–35, 640 P.2d 932, 934–35 (1982), for the proposition that the evidence is insufficient because Plaintiff did not introduce evidence that: Allied's shareholders ignored corporate processes or formalities; the corporation was under-capitalized; and shareholder and corporate funds were commingled. We acknowledge that these are important factors, particularly in parent-subsidiary cases like *Scott* and *Cruttenden*. Furthermore, we agree with Coffman that

the alter ego doctrine is not implicated simply because the shareholder in question owns the vast majority of the corporation's stock. *See Southern Union Exploration Co. v. Wynn Exploration Co.*, 95 N.M. 594, 600, 624 P.2d 536, 542 (Ct.App.1981). However, we do not agree with Coffman's suggestion that the foregoing considerations cover the territory with respect to alter ego. *See, e.g., McKinney v. Gannett Co.*, 817 F.2d 659, 666 (10th Cir.1987) (facts relied on in disregarding separate corporate status included complete stock ownership, control of board of directors, all of revenue went to parent corporation, all capital expenditures were approved by parent corporation, and parent corporation negotiated employment contract between plaintiff and subsidiary).

18. *Lowendahl v. Baltimore & Ohio R.R.*, 247 A.D. 144, 287 N.Y.S. 62, *aff'd* 272 N.Y. 360, 6 N.E.2d 56 (1936), is cited frequently in the "piercing the corporate veil" area and is often followed expressly or implicitly by other courts. Krendl, *supra*, at 13. *Lowendahl* describes the first of the three requirements as follows:

> Control[ ] [is] not mere majority or complete stock control, but complete domination, not only of finances, but of policy and business practice in respect to the transaction attacked so that the corporate entity as to this transaction had at the time no separate mind, will or existence of its own[.]

*Lowendahl*, 287 N.Y.S. at 76.

19. We are satisfied that the evidence introduced at trial fulfills this requirement. Coffman's domination was "substantially more than the control which would be exercised by any majority shareholder." Krendl, *supra*, at 16.

### 2. Improper Purpose

20. Coffman contends that improper purpose via fraud or misrepresentation must relate to the risk of doing business with the corporation, and he urges consideration of a restricted group of evidentiary factors. *See, e.g., Scott*, 107 N.M. at 122, 753 P.2d at 901 (no showing that financial setup of the corporation is a sham or caused an injustice as a

result); *Harlow,* 100 N.M. at 383, 671 P.2d at 44 (undercapitalization is factor to be considered); *Scott Graphics, Inc. v. Mahaney,* 89 N.M. 208, 211–12, 549 P.2d 623, 626–27 (Ct. App.1976) (nothing in record to indicate why corporation was operating at a loss or to indicate that checks were drawn for the purpose of diverting corporate funds to the detriment of creditors). Coffman's view of the proof required to establish an improper purpose is too limited.

21. Misrepresentation of a corporation's assets and purposes is but only one species of improper purpose. Other varieties of improper purposes include participation or direction of improper activities and joint improper acts, such as where the party and subservient corporation cooperate to perform a series of actions which, if all such actions were performed by either alone, would create liability. Krendl, *supra,* at 38–40. This element is designed to apply to a parent corporation that used its subsidiary to carry out an unjust act. *Id.* at 42.

22. In this case, we hold that proof of Coffman's direction and use of Allied in a scheme to generate income through the provision of unnecessary medical services is substantial evidence of an improper purpose. *See Scott,* 107 N.M. at 122, 753 P.2d at 901 ("Some form of moral culpability attributable to the parent, such as use of the subsidiary to perpetrate a fraud is required."); Charles R.P. Keating & Gail O'Gradney, 1 *Fletcher Cyclopedia of the Law of Private Corporations* § 41.45, at 697 (1990 & Cum.Supp.1996) (where a corporate owner directly participates in fraudulent conduct, the corporate status does not operate as a shield against individual liability); Stephen B. Presser, *Piercing the Corporate Veil* § 1.05[3], at 1–59 (1996); *Belvedere Condominium Unit Owners' Ass'n v. R.E. Roark Cos.,* 67 Ohio St.3d 274, 617 N.E.2d 1075, 1086 (1993) ("[C]orporate form may be disregarded and individual shareholders held liable for corporate misdeeds when ... control over the corporation by those to be held liable was ... exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity[.]"); *Walensky v. Jonathan Royce Int'l, Inc.,* 264 N.J.Super.

276, 624 A.2d 613, 617 (App.Div.1993) (personal liability could have been imposed on individual defendant where trial court expressly concluded that he was abusing the corporate form in order to advance his own personal interests and where he had actually defrauded the plaintiff).

### 3. Proximate Cause

23. Coffman argues that this requirement was not met because Plaintiff failed to prove that he sustained "actual" damages. This proposition is not supported by any citation to authority. *See In re Adoption of Doe,* 100 N.M. 764, 765, 676 P.2d 1329, 1330 (1984) (arguments unsupported by citations to authority will not be reviewed). Moreover, an award of nominal damages, rather than actual or compensatory damages, is consistent with a determination that a wrong was done to Plaintiff by Coffman. *See Sanchez v. Clayton,* 117 N.M. 761, 767, 877 P.2d 567, 573 (1994).

24. Coffman also contends that if any damage did occur it was not caused by Allied's corporate structure. He asserts that "[i]t is the 'alter ego' and 'improper purpose', in and of itself, that must be the proximate cause of [the] damage, not some independent tort." This is not the test for proximate cause. "[I]t is sufficient to show some knowing or cooperative effort between the related parties which results in unjust injury to the plaintiff, even though it may not be possible to prove that the defendant's control directly caused [the] plaintiff's injury." Krendl, *supra,* at 27 (footnote omitted). Here, the evidence was sufficient to establish that Plaintiff's injuries, even if they were only unnecessary transportation expenses and loss of time, were the result of Coffman's domination of Allied for an improper purpose.

25. In sum, we hold that substantial evidence supports the determination that the corporate veil of Allied should be pierced and that Coffman is personally liable.

## II. Award of Nominal and Punitive Damages for Breach of Fiduciary Duty

26. Coffman contends that: (1) he was not in a fiduciary relationship with

18

Plaintiff; (2) the award of damages for breach of fiduciary duty, in addition to the award of damages for fraud, constituted a double recovery; and (3) punitive damages cannot be awarded for breach of a fiduciary relationship. We hold that Plaintiff stated a cause of action for breach of fiduciary duty by Coffman, but not a cause of action distinct from fraudulent misrepresentation. Since the two claims are not different, the two awards of punitive damages amount to a double recovery. We reverse the jury award and affirm the trial court's award of punitive damages.

27. Initially, we note that it was Defendants who stated that the claim of breach of fiduciary duty should be tried by the court. If the matter had been tried as Plaintiff desired, the issue would have been before the jury. Thus, to the extent that breach of fiduciary duty is a non-equitable cause of action that should be tried by a jury, we cannot hold Plaintiff responsible for any mishandling of the claim. See Hodgkins v. Christopher, 58 N.M. 637, 641, 274 P.2d 153, 155 (1954) (holding that it is too well established for dispute that a party cannot invite error and then take advantage of it). Rather, we must treat the claim as if it were simply another count presented to the jury.

28. Plaintiff cites Demers v. Gerety, 85 N.M. 641, 645, 515 P.2d 645, 649 (Ct.App. 1973) ("[P]hysician-patient relationship is a fiduciary one."), rev'd on other grounds, 86 N.M. 141, 142–43, 520 P.2d 869, 870–71 (1974), in support of his assertion that the evidentiary facts support an equitable claim for breach of a fiduciary duty. We acknowledge that the relationship between a physician and patient is often described as a fiduciary one. See also Mary Anne Bobinski, Autonomy and Privacy: Protecting Patients From Their Physicians, 55 U.Pitt.L.Rev. 291, 349 (1994) ("Several treatises on fiduciary law name the physician-patient relationship as a fiduciary one and the courts have tended to concur.") (footnotes omitted); Kern ex rel. Kern v. St. Joseph Hospital, Inc., 102 N.M. 452, 456, 697 P.2d 135, 139 (1985) (physician's affirmative duty to disclose material information continues beyond termination of the fiduciary relationship); Keithley v. St.

Joseph's Hospital, 102 N.M. 565, 569, 698 P.2d 435, 439 (Ct.App.1984) (fiduciary duty or confidential relationship between physician and patient implicates a duty to disclose all material information concerning the patient's treatment). It is another question, however, whether a physician's breach of the duty of full and fair disclosure resulting from that relationship gives rise to an equitable cause of action for breach of fiduciary duty that is separate from a cause of action for fraudulent misrepresentation.

29. Our research has failed to uncover a single reported case in which a patient successfully prosecuted such a claim in equity against a physician. Cf. Scott v. Woods, 105 N.M. 177, 184, 730 P.2d 480, 487 (Ct.App. 1986) (claims that directors breached their fiduciary duties as de facto managers or controlling shareholders presented an equitable ground for relief). Moore v. Regents of University of California, 51 Cal.3d 120, 271 Cal. Rptr. 146, 793 P.2d 479 (1990) (en banc), is instructive on this point. In that case the plaintiff alleged that his physician failed to disclose preexisting research and economic interests in the plaintiff's leukemia cells before obtaining consent to the medical procedures by which the cells were extracted. The plaintiff appealed after the trial court dismissed the complaint for failure to state a cause of action. Ultimately, the California Supreme Court determined that the plaintiff only stated a single cause of action against his physician for breach of fiduciary duty or lack of informed consent. See id. at 485, 271 Cal.Rptr. 146, 793 P.2d 479 ("[A] physician who is seeking a patient's consent for a medical procedure must, in order to satisfy his fiduciary duty and to obtain the patient's informed consent, disclose personal interests unrelated to the patient's health, whether research or economic, that may affect his medical judgment.") (footnote omitted). The term "fiduciary," however, signified "only that a physician must disclose all facts material to the patient's decision." Id. at n. 10 ("In some respects the term 'fiduciary' is too broad."); cf. 1 Austin W. Scott & William F. Fratcher, The Law of Trusts § 2.5, at 43 (4th ed. 1987) (the relationship between a physician and patient is a confidential relationship, not a fiduciary relationship).

30. It is this affirmative duty of full and fair disclosure that is at the heart of Plaintiff's claim of breach of fiduciary duty. However, the failure of a physician to disclose the factors that might influence a patient in his decision is a negligence cause of action that is triable by jury. *See Gerety v. Demers*, 92 N.M. 396, 408, 589 P.2d 180, 192 (1978) ("[C]ause of action [for lack of informed consent] is in negligence."); *see also Torres v. State*, 119 N.M. 609, 616, 894 P.2d 386, 393 (1995) ("[F]orseeability, breach, proximate cause, and comparative liability are questions for the jury[.]").

31. Defendants claim that the damage award on the breach of fiduciary duty claim constitutes a second recovery for one set of acts. *See generally Hale v. Basin Motor Co.*, 110 N.M. 314, 320, 795 P.2d 1006, 1012 (1990) ("New Mexico does not allow duplication of damages or double recovery for injuries received."). This issue was preserved in Defendants' argument in support of their motion for a new trial. Defendants contend that Plaintiff proved breach of fiduciary duty by alleging acts amounting to fraud, and that the trial court allowed recovery for the same wrongful acts on two different theories. We agree.

32. The actions that the jury considered in connection with the claim of fraudulent misrepresentation are set forth in the jury instructions. The trial court made its decision on the claim of breach of fiduciary duty without hearing evidence in addition to that which was presented at trial. Furthermore, the trial court's findings underlying the breach of fiduciary duty claim do not implicate any specific or general conduct different from that discussed in the jury instructions on fraudulent misrepresentation. We hold that Plaintiff did not state a separate cause of action for breach of fiduciary duty under existing law and the facts of this case.

33. Based on the foregoing, we reverse the jury's award and affirm the trial court's award of $50,000 in punitive damages for breach of fiduciary duty. *See Hood v. Fulkerson*, 102 N.M. 677, 679–80, 699 P.2d 608, 610–11 (1985) (plaintiff required to choose between award of $20,000 based on negligence and award of $13,500 based on breach

of warranty); *Central Sec. & Alarm Co. v. Mehler*, 121 N.M. 840, 846, 918 P.2d 1340, 1346 (Ct.App.1996) ("The plaintiff may be able to pursue several theories of recovery; if liability is found on each, the plaintiff would be required to make an election among awards if duplication or double recovery would otherwise result."). Since it was Defendants who were responsible for diverting consideration of the breach of fiduciary claim from the jury to the trial court, we will not address their contention that such a claim, *in equity*, does not support an award of nominal and punitive damages. *See Hodgkins*, 58 N.M. at 641, 274 P.2d at 155.

**III. Whether the Absence of Actual Damages Constitutes a Failure to Prove Fraud and Whether the Jury Could Award Punitive Damages for Fraud**

34. Coffman contends that actual damage is an element of fraud and that Plaintiff failed to prove fraud by virtue of the absence of any proof of actual damage. We disagree. The fraud here was an intentional tort. *Citizens Bank v. C & H Constr. & Paving Co.*, 89 N.M. 360, 366, 552 P.2d 796, 802 (Ct.App.1976).

> In suits based on intentional torts, ... no allegation of actual damages is necessary to establish a cause of action. In such cases, the jury may award nominal damages to acknowledge that the cause of action was established and punitive damages to punish the wrongdoer for violating the rights of the victim.

*Sanchez*, 117 N.M. at 767, 877 P.2d at 573 (citation omitted). *See also* NMUJI 1997, 13–1633 (instruction on fraudulent misrepresentation; no component requires allegation of amount).

35. Defendants attempt to distinguish *Sanchez* on the grounds that it was not a fraud case and that it did not overrule well-settled law, specifically *Bank of Commerce v. Broyles*, 16 N.M. 414, 425, 120 P. 670, 673 (1910) ("[F]raud without damage ... gives no cause of action[.]"), *rev'd on other grounds, Schmidt & Story v. Bank of Commerce*, 234 U.S. 64, 34 S.Ct. 730, 58 L.Ed. 1214 (1914). But the language of *Sanchez* is

unequivocal, and we attach very little significance to the failure of *Sanchez* to state specifically that it was overruling a statement in an 84–year-old decision. This Court is bound by what our Supreme Court said in *Sanchez*.

36. We hold that proof of actual damages was not necessary to sustain Plaintiff's cause of action for fraud and that it was within the province of the judge or jury to award nominal damages to acknowledge that the cause of action was established and punitive damages to punish Coffman for violating Plaintiff's rights.

## IV. Propriety of Award of Punitive Damages Against Coffman Where No Punitives Were Awarded Against Corporation

37. Coffman contends that because his liability is a form of vicarious liability, he cannot be held liable for punitive damages unless the corporation, the party primarily liable, is found to be responsible for the same element of damages. *See* generally *Kinetics, Inc. v. El Paso Prods. Co.*, 99 N.M. 22, 27, 653 P.2d 522, 527 (Ct.App.1982) (there can be no secondary liability without primary liability). As Coffman acknowledges, however, his liability in this case was based on the jury's determination that the corporate veil should be pierced to hold him personally liable for the acts of the corporation. At the heart of the doctrine of piercing of the corporate veil is a determination of individual liability. *See* Krendl, *supra*, at 2 (corporate entity disregarded and proper parties held liable for the corporation's actions); *Morrow v. Cooper*, 113 N.M. 246, 249, 824 P.2d 1048, 1051 (Ct. App.1991) (individual liability imposed when corporate veil is pierced). Since this case involves Coffman's primary rather than secondary liability, the absence of a finding that the corporation is liable for punitive damages is of no significance.

## V. Amount of Punitive Damages

38. Coffman challenges the aggregate $75,000 in punitive damages awarded by the jury and the trial court on several grounds. The effect of our determination that Plaintiff's causes of action for fraudulent misrepresentation and breach of fiduciary duty are not distinct is to reduce the punitive damages award to $50,000. We address Coffman's arguments as they relate to the reduced award.

39. Coffman's first argument proceeds as follows: punitive damages must be related to both the "injury" and "actual damages" proven; Plaintiff failed to prove actual damages; the $50,000 award does not bear any relationship to actual damages; and the punitive damages therefore must be presumed to be indicative of passion or prejudice. We are not persuaded. Punitive damages are allowed in New Mexico even when supported only by an award of nominal damages. *Sanchez*, 117 N.M. at 767, 877 P.2d at 573. Furthermore, punitive damages do not have to be in reasonable proportion to other damages; factors to be weighed by the jury include the enormity and nature of the wrong and any aggravating circumstances. *Green Tree Acceptance, Inc. v. Layton*, 108 N.M. 171, 174, 769 P.2d 84, 87 (1989).

40. Coffman cites several New Mexico cases which involved the reversal of punitive damages awards where the ratios were smaller than presented in this case. Those cases are not compelling as they were not decided on the single ground that the ratios were too large. *See Galindo v. Western States Collection Co.*, 82 N.M. 149, 155, 477 P.2d 325, 331 (Ct.App.1970) ("little, if any, aggravating circumstances"); *Montoya v. Moore*, 77 N.M. 326, 331, 422 P.2d 363, 366 (Ct.App.1967) (no evidence of malice on the part of the one to be punished). *Magma Copper Co. v. Shuster*, 118 Ariz. 151, 575 P.2d 350, 353 (App.1977) (reversing awarded of $1 in nominal damages and $30,000 in punitive damages where physician/employee struck a patient in the mouth and applied painful pressure to the patient's injured knee; reviewing court focused only on the proportionality of the two awards and the absence of actual damages), is simply inconsistent with the law of this state. *See also* Richard C. Tinney, Annotation, *Sufficiency of Showing of Actual Damages to Support Award of Punitive Damages—Modern Cases*, 40 A.L.R.4th 11, § 2(a) (1985 & Supp.1996) (jurisdictions divided on whether there must be a reasonable relationship between the amount

awarded as punitive damages and the amount awarded as actual or compensatory damages).

41. Coffman quotes from *BMW of North America, Inc. v. Gore,* 517 U.S. 559, 583, 116 S.Ct. 1589, 1603, 134 L.Ed.2d 809 (1996), a due process case, to highlight the significance of the ratio present here: "When the ratio [of punitive damages to actual damages] is a breathtaking 500 to 1, ... the award must surely 'raise a suspicious judicial eyebrow.'" (Quoting *TXO Prod. Corp. v. Alliance Resources Corp.,* 509 U.S. 443, 481, 113 S.Ct. 2711, 2732, 125 L.Ed.2d 366 (1993) (O'Connor, J., dissenting).) It remains, however, that neither the United States Supreme Court nor the courts of this state will evaluate the propriety of a punitive damages award according to a mathematical formula that compares punitive damages to economic damages. *See id.* at 583, 116 S.Ct. at 1602; *Green Tree Acceptance,* 108 N.M. at 174, 769 P.2d at 87. Contrary to Coffman's argument, *BMW* noted that the harm likely to result is as much a consideration as the harm that actually occurred; and the Supreme Court also stated that a high ratio of punitive damages to actual damages could be justified if a particularly egregious act resulted in a small amount of economic damage. *See BMW,* 517 U.S. at 581, 116 S.Ct. at 1602.

42. Coffman also makes several assertions that are aimed at the evidence supporting the punitive damages award: Plaintiff did not prove damages to other patients; Coffman sold the business in 1993 after he sustained a permanently disabling injury; and Plaintiff's own behavior was not innocent. *See generally Economy Rentals, Inc. v. Garcia,* 112 N.M. 748, 764, 819 P.2d 1306, 1322 (1991) (substantial evidence standard of review). At best, these assertions go to the weight of the evidence. That Plaintiff did not prove that other patients suffered actual damages does not conclusively establish that Coffman's scheme was not widespread. The fact that the punitive damage award might not serve to deter Coffman from similar future misconduct does not eliminate the value of the award; its purpose is to punish Coffman and to deter *others* from similar conduct. *See Albuquerque Concrete Coring Co.*

*v. Pan Am World Servs., Inc.,* 118 N.M. 140, 143, 879 P.2d 772, 775 (1994). That Plaintiff's conduct may have been open to criticism does not diminish Coffman's culpability. *Cf. Robison v. Katz,* 94 N.M. 314, 321, 610 P.2d 201, 208 (Ct.App.1980) (punitive damages awarded to punish offender rather than to compensate the party wronged).

43. Based on the foregoing, we hold that the punitive damages award was supported by substantial evidence and that the amount awarded was not excessive.

## VI. Award of Attorney's Fees

44. Noting that attorney's fees are generally not recoverable in New Mexico on claims of fraud, Defendants argue that since Plaintiff elected not to recover on his claim under the Unfair Practices Act, he is not entitled to an award of attorney's fees under Section 57–12–10(C) ("The court shall award attorneys' fees and costs to the party complaining of an unfair or deceptive trade practice or unconscionable trade practice if he prevails."). In essence, Defendants contend that a plaintiff's ability to recover attorney's fees under the Unfair Practices Act is a "remedy" that is part of what Plaintiff gave up when he elected to recover damages on the fraudulent misrepresentation claim. We disagree.

45. The two out-of-state cases cited by Defendants in the brief-in-chief are not persuasive as they are double-recovery cases in which plaintiffs were not permitted to obtain punitive damages plus statutory treble damages for the same acts. *Roberts v. American Warranty Corp.,* 514 A.2d 1132, 1135 (Del.Super.Ct.1986); *Bill Terry's Inc. v. Atlantic Motor Sales, Inc.,* 409 So.2d 507, 509 (Fla.Dist.Ct.App.1982). Since attorney's fees were not an element of compensatory damages in this case and because they are not a surrogate for punitive damages, they are not covered by a prohibition against duplicate recovery of damages.

46. *MidAmerica Federal Savings & Loan Ass'n v. Shearson/American Express, Inc.,* 962 F.2d 1470 (10th Cir.1992), is comparable to the situation presented by this appeal. In that case the plaintiff brought suc-

cessful claims under common law breach of fiduciary duty and the Oklahoma securities act. Actual damages ($7,513,851) and punitives ($1) were awarded under the breach of fiduciary duty claim and attorney's fees ($512,197.15) were awarded under the state securities act. The appellate court held that the award of damages and attorney's fees was not duplicative, noting that the applicable statute stated that " '[the] rights and remedies provided for in this title are in addition to other rights or remedies that may exist in law or in equity....' " *Id.* at 1473 (citations omitted). Similarly, our own Section 57–12–10(D) provides, "The relief provided in this section is in addition to remedies otherwise available against the same conduct under the common law or other statutes of this state."

47. We find *MidAmerica* to be persuasive authority on this issue, and we affirm the award of attorney's fees under Section 57–12–10(C). *See also Hale v. Basin Motor Co.*, 110 N.M. 314, 795 P.2d 1006 (1990) (affirming award of attorney's fees under the Unfair Trade Practices Act and remanding for a consideration of whether fraud was proved and, if so, what amount of punitive damages was appropriate); *Linthicum v. Archambault*, 379 Mass. 381, 398 N.E.2d 482 (1979) (where plaintiff has valid breach-of-contract claim in addition to claim under consumer protection act, plaintiff can recover attorney's fees under the consumer protection act in addition to breach-of-contract damages).

## CONCLUSION

48. We reverse the jury's award of $1 in nominal damages and $25,000 in punitive damages for fraudulent misrepresentation. We affirm the trial court's award of nominal damages and punitive damages for breach of fiduciary duty. We affirm the trial court's award of attorney's fees, and we remand for an award to Plaintiff of such attorney's fees as the trial court finds reasonable for services on appeal.

49. IT IS SO ORDERED.

ALARID, J., concurs.

HARTZ, C.J. (specially concurs).

HARTZ, Chief Judge (specially concurring).

(50) I concur in the result and in all of the opinion of Judge Flores for the Court except the discussion of piercing the corporate veil. It seems to me that application of piercing-the-corporate-veil doctrine to this case is unnecessary and creates a potential for confusion.

(51) First, application of the doctrine is unnecessary because Dr. Coffman, as an officer of the corporation, is liable for his own fraudulent conduct under straightforward application of the law of agency. Section 348 of Restatement (Second) of Agency (1958) states:

> An agent who fraudulently makes representations, uses duress, or knowingly assists in the commission of tortious fraud or duress by his principal or by others is subject to liability in tort to the injured person although the fraud or duress occurs in a transaction on behalf of the principal.

In other words, even if Coffman's conduct was on behalf of the corporation, he is liable for "knowingly assist[ing] in the commission of tortious fraud" by the corporation. *See Duval County Ranch Co. v. Wooldridge*, 674 S.W.2d 332, 337 (Tex.Ct.App.1984) (corporate officers are liable for their own fraudulent acts even though they are acting for the corporation's benefit). In such circumstances, there is no need to show the usual predicates for piercing the corporate veil.

(52) Second, although piercing-the-corporate-veil doctrine has been used to impose personal liability in situations similar to the present case, *see Armada Supply v. S/T Agios Nikolas*, 613 F.Supp. 1459, 1471–72 (S.D.N.Y.1985), such an application of the doctrine may create confusion. In particular, the requirement that there be an improper purpose before the corporate veil can be lifted should not be satisfied by just the fact that the corporation engaged in misconduct. As I understand the purpose of the doctrine, a court should be able to pierce the corporate veil only when the improper conduct was facilitated by the use of the corporate form—rather than, say, a sole proprietorship or a partnership—to conduct business. *State*

*Trust & Sav. Bank v. Hermosa Land & Cattle Co.*, 30 N.M. 566, 577, 240 P. 469, 473 (1925), spoke of application of the doctrine to "cases in which corporate organization was resorted to to accomplish fraud, or to defeat public justice or to circumvent statutes...." Similarly, *Kutz Canon Oil & Gas Co. v. Harr*, 56 N.M. 358, 367, 244 P.2d 522, 527 (1952), said: "[W]here corporate entity is employed as a shield to defraud creditors or otherwise perpetrate frauds, the veil of corporate existence will be drawn aside and liability imposed on its stockholders as though there were no corporate existence." One commentator has summarized the case law by stating that "courts regularly disregard the entity when its *separateness* is used for illegitimate purposes." Robert B. Thompson, *Piercing The Corporate Veil: An Empirical Study*, 76 Cornell L.Rev. 1036, 1041 (1991) (emphasis added). If the improper-purpose element can be satisfied whenever the corporation commits fraud, then the doctrine could create unjustifiable results. Conceivably, individual shareholders could be personally liable for corporate fraud of which they are totally innocent; it should be enough that the value of their investment in the corporation would be decreased by the corporation's liability.

(53) My difference with the rest of the panel regarding the appropriate analysis does not, however, affect the result. If anything, reliance on Restatement Section 348 makes affirmance easier.