# IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO

Opinion Number: _____

Filing Date:  August 31, 2015 

**NO. 32,212**

**KARI T. MORRISSEY, as personal representative**
**of the estate of FRANCES FERNANDEZ, deceased,**

Plaintiff-Appellant,

v.

**WILLIAM J. KRYSTOPOWICZ, SILVERSTONE HEALTHCARE, INC.,**
**and SILVERSTONE HEALTHCARE OF RATON, LLC,**

Defendants-Appellees.

**APPEAL FROM THE DISTRICT COURT OF BERNALILLO COUNTY**
**Beatrice J. Brickhouse, District Judge**

Paul Kennedy & Associates, P.C.
Paul J. Kennedy
Arne R. Leonard
Albuquerque, NM

for Appellant

Thomasson Law Firm, LLC
Richard E. Thomasson
Macon, GA

for Appellees

**OPINION**

**BUSTAMANTE, Judge.**

{1}     Plaintiff Kari T. Morrissey (Plaintiff), personal representative of the estate of Frances Fernandez, deceased, appeals the dismissal of her claims after a bench trial. We consider whether the district court erred in refusing to pierce the corporate veil to hold William J. Krystopowicz (Krystopowicz) liable for a default judgment against two corporations of which he was the sole shareholder. We reverse.

**BACKGROUND**

{2}     Although the present suit was filed after the death of Mrs. Fernandez in April 2006, the facts salient to the issues we resolve start with the formation and management of two corporate defendants, Silverstone Healthcare, Inc. and Silverstone Healthcare of Raton, LLC (collectively, the Silverstone Defendants), in 2003. Brian Davidson approached Krystopowicz about acquiring nursing homes in New Mexico. Davidson was barred from acquiring or operating nursing homes himself because of pending bankruptcy proceedings as well as other "tax issues" and "legal problems" which "precluded him from participating in the ownership or operation of licensed nursing home facilities." Krystopowicz knew that Davidson was so barred. He also knew that Davidson was engaged in self-dealing in violation of his agency relationship with another company. Despite this knowledge, Krystopowicz

agreed to join with Davidson to acquire nursing homes in New Mexico and to treat Davidson as fifty percent owner of a corporation formed to do so. Thus Krystopowicz became the "front man" for the enterprise.

{3} Silverstone Healthcare, Inc. was incorporated in 2003 with Krystopowicz as the sole shareholder. Silverstone Healthcare, Inc. became the owner of ten limited liability companies—all created by Krystopowicz and Davidson—which in turn acquired ten nursing homes in New Mexico. Krystopowicz did not perform any debt-equity analysis for the facilities, review the operation of the facilities, determine budgetary needs or working capital needs of the facilities, or review the patient census for the facilities before they were acquired. All of the nursing home facilities were managed and operated by Peak Medical NM Management Services, Inc. (Peak) and Krystopowicz was never involved in day-to-day patient care issues at any of the facilities.

{4} Silverstone Healthcare of Raton, LLC, doing business as Raton Nursing and Rehabilitation Center (the Center)—where Mrs. Fernandez resided—was one of the LLCs created by Krystopowicz and owned by Silverstone Healthcare, Inc. Krystopowicz was the sole member and managing partner of Silverstone Healthcare of Raton, LLC.

{5} Revenue generated by the ten facilities in New Mexico, which amounted to over $47 million annually, was transferred into a single "concentration account" to which Krystopowicz and Peak had access. Although neither Davidson nor Krystopowicz performed any services for the Silverstone Defendants between August 2003 and June 2005, Krystopowicz caused a "distribution" of $400,000 to be issued from the concentration account in late June 2005. Of the $400,000 distribution, Krystopowicz received $100,000 and Davidson received $200,000. The funds were channeled through another corporation of which Krystopowicz was a shareholder in order to obscure Davidson's involvement with the Silverstone Defendants and the nursing homes.

{6} As the facilities became profitable, Krystopowicz secured a $4 million line of credit from GE Capital in September 2005. Although GE Capital prohibited Krystopowicz from transferring fifty percent of his shares in Silverstone Healthcare, Inc. to Davidson, Krystopowicz continued to treat Davidson as a fifty percent owner of Silverstone Healthcare, Inc. Between July 2005 and March 2006, Krystopowicz distributed at least six payments of $25,000 from the "concentration account" to himself, Davidson, and others. Davidson received fifty percent of these payments.

{7} In January 2006, New Mexico Medicare officials banned admissions to the Center. In addition, "[f]rom January through April 2006, the Silverstone [Defendants]

were knowingly overstating their accounts receivable, and by April 2006 [the] Silverstone [Defendants] went into default on [their] line of credit from GE Capital." Earnings deteriorated because of the Center's inability to accept new Medicare patients. Krystopowicz then transferred the licenses for all ten New Mexico facilities to Cathedral Rock Corporation for no compensation. Krystopowicz entered into a personal contract with Cathedral Rock Corporation to help close the transaction. He was paid $150,000 under the contract.

{8}     Plaintiff filed suit in March 2009. Mrs. Fernandez had lived at the Center for approximately one year before her death. Plaintiff named six corporate entities, including the Silverstone Defendants, as well as Krystopowicz and other individuals. The complaint alleged negligence resulting in wrongful death, violation of the New Mexico Unfair Trade Practices Act, negligence per se, breach of contract, and civil conspiracy. The complaint was later amended to include a claim for loss of consortium by Mrs. Fernandez's son.

{9}     The Silverstone Defendants failed to answer the complaint and a default judgment was entered against them. Consequently, the allegations in the complaint were considered admitted. *Chronister v. State Farm Mut. Auto. Ins. Co.*, 1963-NMSC-093, ¶ 7, 72 N.M. 159, 381 P.2d 673 (stating that "by permitting the default judgments to be entered against him, [the defendant] admitted all the allegations in

said complaints"). After a two-day hearing, the district court awarded Plaintiff $4,828,300 in damages. After the other defendants were dismissed from suit, the case proceeded to a bench trial against Krystopowicz only. Krystopowicz was the only witness at the trial.

{10} Plaintiff argued two theories. First, she argued that the Silverstone Defendants' corporate veil should be pierced so as to hold Krystopowicz personally liable for the damages awarded against the Silverstone Defendants. Second, she argued that Krystopowicz had engaged in a civil conspiracy with the other defendants and should be held personally liable for the negligence of his co-conspirators, the Silverstone Defendants.

{11} The district court ruled against Plaintiff on both theories. While the district court agreed that Krystopowicz had satisfied some of the criteria for piercing the corporate veil, the district court reaffirmed an earlier ruling that the corporate veil could not be pierced to hold Krystopowicz liable for the Silverstone Defendants' conduct because "Plaintiff[] had not shown . . . that [Mrs.] Fernandez suffered any damages as a result of [Krystopowicz's] domination of Silverstone [entities] for an improper purpose." Similarly, although the district court found that the Silverstone Defendants "ha[d] admitted to participating in a civil conspiracy with . . . Krystopowicz and others[,]" it concluded that the civil conspiracy claim

5

against Krystopowicz failed as a matter of law because there was no evidence "establishing a causal connection between . . . Krystopowicz['s conduct] and the death of [Mrs.] Fernandez." Inherent to both of these rulings is the district court's rejection of Plaintiff's argument that the allegations deemed admitted through the Silverstone Defendants' default judgment could be used against Krystopowicz. Additional facts are provided as relevant to our discussion of Plaintiff's arguments.

**DISCUSSION**

{12} The main issue on appeal is whether the district court erred by ruling that the corporate veil could not be pierced to hold Krystopowicz personally liable for the judgment against the Silverstone Defendants. Plaintiff makes a number of arguments related to this issue, including (1) that the admissions of the Silverstone Defendants should be imputed to Krystopowicz, (2) that the admissions are admissible against Krystopowicz as a co-conspirator, and (3) that the district court erred in not holding Krystopowicz liable for civil conspiracy. Because we conclude that the corporate veil should be pierced, we need not address Plaintiff's other arguments.

{13} "A basic proposition of corporate law is that a corporation will ordinarily be treated as a legal entity separate from its shareholders." *Scott v. AZL Res., Inc.*, 1988-NMSC-028, ¶ 6, 107 N.M. 118, 753 P.2d 897. Under this rule, individual shareholders cannot be held personally liable for the corporation's debt. *Id.* Under

6

certain circumstances, however, courts may exercise their equitable power to "pierce the corporate veil," thereby requiring shareholders to answer for the corporation's liability. *Id.* ("Only under special circumstances will the courts disregard the corporate entity to pierce the corporate veil [and] hold[] individual shareholders . . . liable."); *London v. Bruskas*, 1958-NMSC-020, ¶ 18, 64 N.M. 73, 324 P.2d 424 (stating that "in a proper case equity would require the general rule [that corporations and their shareholders are separate] to be discharged"). To do so, the district court must make three findings. First, that "the subsidiary or other subservient corporation was operated not in a legitimate fashion to serve the valid goals and purposes of that corporation but . . . instead under the domination and control and for the purposes of some dominant party." *Scott*, 1988-NMSC-028, ¶ 7. This requirement is known as "instrumentality," "domination," or, in New Mexico, as the "alter ego doctrine." *Id.* Second, that there is "[s]ome form of moral culpability attributable to the [shareholder], such as use of the subsidiary to perpetrate a fraud." *Id.* ¶ 9 ("[I]n fairness to the [shareholder] and to support the policy of limited liability of a corporation, improper purpose must be established before the [shareholder] can be found liable." (alterations, internal quotation marks, and citation omitted)). Third, the court must find that "there [is] some reasonable relationship between the injury suffered by the plaintiff and the actions of the defendant." Cathy S. Krendl & James

7

R. Krendl, *Piercing the Corporate Veil: Focusing the Inquiry*, 55 Denver L.J. 1, 27 (1978). This finding must demonstrate "some knowing or cooperative effort between the related parties which results in unjust injury to the plaintiff, even though it may not be possible to prove that the defendant's control directly caused [the] plaintiff's injury." Krendl, *supra* (footnote omitted), quoted in *Garcia v. Coffman*, 1997-NMCA-092, ¶ 24, 124 N.M. 12, 946 P.2d 216. This requirement is referred to as "proximate cause." *Garcia*, 1997-NMCA-092, ¶ 10 ("The three requirements for piercing the corporate veil are: (1) instrumentality or domination; (2) improper purpose; and (3) proximate cause."). "The burden of proof is upon the party seeking to impose individual liability on the shareholder to demonstrate that the grounds for piercing the corporate veil exist." *Nursing Home Grp. Rehab. Servs., Inc. v. Suncrest Health Care, Inc.*, 162 Ohio App. 3d 577, 581, 2005-Ohio-3945, 834 N.E.2d 382, at ¶ 12 (alteration, internal quotation marks, and citation omitted).

{14}     Here, the district court found in a letter decision that "Plaintiff presented sufficient evidence that Krystopowicz exercised improper domination of the Silverstone [D]efendants" and that "Krystopowicz used the Silverstone [D]efendants for improper purposes." Thus, the first two requirements for piercing the corporate veil were established. The district court also found that

>          there was no evidence presented to the [district c]ourt that as a result of
>          Krystopowicz's domination of the Silverstone [D]efendants for an

improper purpose . . . [Mrs.] Fernandez got less or substandard care . . ., or that the distributions taken by Krystopowicz . . . adversely affected the operations of the [Center] in any way.

{15} It concluded that "without any evidence to satisfy the causation prong, Plaintiff's [argument for piercing the corporate veil must] fail." The district court's conclusions as to the lack of evidence of a link between Krystopowicz's actions and Mrs. Fernandez's injury were included in the district court's findings of fact and conclusions of law accompanying the final written judgment. Because Krystopowicz does not challenge the district court's findings and conclusions as to the first two prongs, our focus is on the narrow issue of whether there is a causal connection between Krystopowicz's misuse of the corporate form and injury to the Plaintiff.

{16} We do not disagree with the district court that Plaintiff failed to demonstrate a *direct* causal link between Mrs. Fernandez's death and Krystopowicz's management of the Silverstone Defendants. Although she argues that the evidence at trial was sufficient to demonstrate such a link, Plaintiff does not direct us to evidence suggesting that (1) the Center was underfunded; (2) any understaffing was the result of lack of funds; (3) Krystopowicz's distributions of funds to himself and others, or any other misuse of the corporate form, led to any underfunding, staffing shortage, or impairment of care at the Center; (4) Krystopowicz knew that the budget for the Center was inadequate; or (5) Krystopowicz denied requests for changes in the

9

Center's budget or ignored reports of inadequate staffing or care. While Krystopowicz testified that he reviewed monthly profit and loss statements for the facilities, and that those statements included "analysis of census [and] operational issues," there was no evidence that he modified the Center's operations based on that information. Finally, there was no evidence presented related to industry standards for staffing levels, minimum capital or cash flow requirements, or the impact of "profit siphoning" on nursing homes generally. *See generally* Mark R. Kosieradzki & Joel E. Smith, *Direct Participant Liability in Causes of Action for Corporate Negligence*, 5 Litigating Tort Cases § 63:37.50 (2014) (discussing both direct and indirect liability, including corporate veil, theories). Nor did Plaintiff propose findings of fact related to these issues.

{17} However, a direct causal link to the tort-related acts is not required. The question is not whether there is a direct link between Krystopowicz's conduct and Mrs. Fernandez's death but rather whether Krystopowicz's abuse of the corporate form caused some injury to Plaintiff. *Garcia*, 1997-NMCA-092, ¶ 24 ("It is sufficient to show some knowing or cooperative effort between the related parties which results in unjust injury to the plaintiff, even though it may not be possible to prove that the defendant's control directly caused the plaintiff's injury." (alterations, internal quotation marks, and citation omitted)). We explain by starting with an example.

10

{18} In *Mobius Management Systems, Inc. v. West Physician Search, L.L.C.*, the Missouri Court of Appeals considered whether the district court correctly denied the plaintiff's efforts to pierce the corporate veil where a consent judgment against the defendant company had been entered. 175 S.W.3d 186, 187 (Mo. Ct. App. 2005). The case arose out of the defendant company's failure to pay rent to the plaintiff. *Id.* The plaintiff sued under a Missouri statute to recover past and future rent, attorney fees, and possession of the property. *Id.* The parties entered into a consent judgment, which was signed by the defendant company's managing member. *Id.* When the plaintiff was unsuccessful in collecting the judgment from the defendant company, it filed a motion to pierce the corporate veil to hold the managing member accountable. *Id.* The district court dismissed the motion. *Id.* at 188.

{19} On appeal, the appellate court reversed. *Id.* at 189. The court determined that the plaintiff had sufficiently shown that the first two requirements for piercing the corporate veil—alter ego/control and breach of a duty/improper purpose—were met. *Id.* The appellate court concluded that "[the managing member] circumvented [the defendant company's] legal obligations by operating an undercapitalized shell corporation—and therefore used his control over [the defendant company] to avoid its obligations to [the plaintiff]." *Id.*

11

{20}    As to the third prong, it held that, like in New Mexico, "the plaintiff must show that the control and breach of duty proximately caused the injury or unjust loss." *Id.* It concluded, "Clearly, [the plaintiff] has suffered an injury—an unpaid $175,000 Judgment—and this injury was proximately caused by [the defendant company's] conduct. The only reason [the plaintiff] has not been paid the money it is legally owed is because [the defendant company] lacks the necessary capital to satisfy this judgment." *Id.* Thus, the managing member in *Mobius* was liable for the corporation's debts because he had intentionally manipulated the corporation so as to avoid having to pay any judgment. *See Rice v. Oriental Fireworks Co.*, 707 P.2d 1250, 1255-56 (1985) (framing the proximate cause prong as whether "the shareholder's improper conduct . . . caused [the] plaintiff's inability to obtain an adequate remedy from the corporation" and holding that "there can be no doubt that [the shareholder's] failure adequately to capitalize or obtain insurance coverage for [the defendant corporation] has caused [the] plaintiff to have an inadequate remedy against the corporation").

{21}    We recognize that generally insolvency of a corporation alone is not a justification for piercing the corporate veil. O'Neal & Thompson's *2 Close Corporations and LLCs: Law and Practice* § 8:20 (Rev. 3d ed. 2015) (stating that "if a corporation has 'adequate' capital and if proper formalities have been observed, shareholders are not liable for the corporation's torts, even if corporate assets prove

12

to be insufficient to pay the tort claimants"); *Scott*, 1988-NMSC-028, ¶ 10 ("Mere proof that the corporation is now insolvent is insufficient."). However, "[i]t is inequitable to allow shareholders to set up a flimsy organization just to escape personal liability." *Fontana v. TLD Builders, Inc.*, 362 Ill. App. 3d 491, 504, 840 N.E.2d 767, 779 (2005); *see Scott*, 1988-NMSC-028, ¶ 10 ("[A] party seeking to pierce the corporate veil must show that the financial setup of the corporation is a sham and causes an injustice."); *cf. Mobius*, 175 S.W.3d at 189 ("Inadequate capitalization is circumstantial evidence of an improper purpose or reckless disregard for the rights of others.").

{22} We conclude that, similar to *Mobius*, Krystopowicz's abuse of the corporate form resulted in a sham corporation leading to Plaintiff's inability to recover for her injury. Together with the district court's findings that Krystopowicz used the Silverstone Defendants in order to obscure Davidson's involvement with the nursing homes and to funnel funds from the "concentration account" to himself and Davidson, the district court's other findings indicate that Krystopowicz failed to manage the Silverstone Defendants in good faith to meet their legal obligations. *See Hammett v. Atcheson*, 438 S.W.3d 452, 461 (Mo. Ct. App. 2014) ("Where a corporation [or an LLC] is used for an improper purpose and to perpetuate injustice by which it avoids its legal obligations, equity will step in, pierce the corporate veil and grant

13

appropriate relief." (internal quotation marks and citation omitted)). Krystopowicz does not challenge the following findings; consequently, they are binding on appeal. *Stueber v. Pickard*, 1991-NMSC-082, ¶ 9, 112 NM 489, 816 P.2d 1111. The district court found that the total initial capitalization of Silverstone Healthcare, Inc. and Silverstone Healthcare of Raton, LLC was $2,000 and $100, respectively. It found that the "initial working capital for Silverstone Healthcare, Inc." also included a line of credit of $1,900,000 that was "apportioned equally among [ten] underlying LLC[]s, including Silverstone Healthcare of Raton[, LLC]." It found that the ten nursing home facilities together generated over $47 million in annual revenue. In addition, it found that Krystopowicz "intentionally failed to perform any debt-equity analysis for the [nursing home] facilities, to check operations at the facilities, to determine the budgetary needs of the facilities, to determine working capital needs of the facilities, or to review the patient 'census' for the facilities." The district court found that "[a]lthough he was contractually obligated to make good faith attempts to secure insurance coverage for the Silverstone entities, . . . Krystopowicz failed to secure any such insurance and he failed to verify or even inquire as to whether or not any such insurance coverage existed." *See* Joseph E. Casson & Julia MacMillen, *Protecting Nursing Home Companies: Limiting Liability Through Corporate Restructuring*, 36 J. Health L. 577, 603 (2003) (stating that nursing home companies should "[m]aintain

14

adequate insurance according to state-law and industry standards" in order to avoid corporate veil piercing). The district court also found that Krystopowicz caused "distributions" of approximately $550,000 to be made to him and others from the "concentration account." *Id.* (stating that nursing home companies should "[a]void even the appearance of siphoning revenues to related entities or shareholders/members" to prevent corporate veil piercing). And, when the enterprise collapsed, Krystopowicz conveyed all of Silverstone Healthcare, Inc.'s assets for no consideration to the corporation. Instead, he personally profited from the failure. Finally, it found that "[a]s of October 17, 2011, the Silverstone [D]efendants have an outstanding liability to the Internal Revenue Service for $1,000,000 in . . . taxes and penalties."

{23}    In addition to these findings regarding Krystopowicz's management of the Silverstone Defendants, the district court made several findings as to Krystopowicz's conduct in the current suit. It found that "[a]lthough he was the sole shareholder, officer, and director of . . . Silverstone Healthcare, Inc. and the manager of . . . Silverstone Healthcare of Raton, LLC[], . . . Krystopowicz took no action to assure that the interests of these corporate entities were defended in the current litigation, and he intentionally declined to engage counsel to represent these entities in the current litigation." It further found that "Krystopowicz has intentionally failed to

15

verify or determine if either of the two Silverstone [D]efendants maintained insurance coverage which could have provided for a defense in the current litigation."

{24} The inability to recover for her injuries is itself a harm caused by Krystopowicz's misuse and abuse of the corporate form. There can be no question about the causal relationship between Krystopowicz's dominance and control of the Silverstone Defendants for an improper purpose and the corporations' inability to answer for their obligations.

{25} We hold that the corporate veil should be pierced and that Krystopowicz should be accountable for the Silverstone Defendants' default judgment. Given this disposition, we need not address Plaintiff's other arguments.

**CONCLUSION**

{26} We hold that the unchallenged findings and conclusions meet the requirements for piercing the corporate veil of the Silverstone Defendants such that Krystopowicz can be held liable for the default judgment against those entities. The district court's concept of injury was too narrow. The district court therefore erred in dismissing Plaintiff's claims against Krystopowicz. We reverse and remand for entry of an order consistent with this Opinion.

{27} **IT IS SO ORDERED.**

_____
**MICHAEL D. BUSTAMANTE, Judge**

16

**WE CONCUR:**

_____

**RODERICK T. KENNEDY, Judge**

_____

**M. MONICA ZAMORA, Judge**